# Arnold et al., Appellants, *v.* Blabon.

*Practice (Supreme Court)—Assignment of error.*

An assignment of error to a ruling admitting evidence, which fails to set forth the evidence admitted, is improper.

*Practice (C. P.)—Notice of special matter.*

In an action of assumpsit, notice by the defendant that he " will offer evidence of the matters set out in the affidavit of defence, a copy of which is enclosed," is sufficient notice of special matter, if the affidavit of defence specifically sets out the defence relied upon.

*Contract—Measure of damages.*

In an action for breach of contract for a supply of raw material for a factory for a year, when it appears that the vendor after partially completing the contract announced that he would deliver no more goods, the measure of damages is the difference between the price agreed upon in the contract and the market price at the date of the breach.

Argued Jan. 28, 1892.    Appeal, No. 101, Jan. T., 1892, by plaintiffs, Arnold & Co., from judgment of C. P. No. 3, Phila. Co., Dec. T., 1889, No. 660, on certificate for defendants, George W. Blabon & Co.    Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for goods sold and delivered.    Pleas non assumpsit, payment, set-off.    The defendants filed an affidavit of defence in which they averred :

" After delivering to us the quantity of granulated cork, for which suit is brought, the plaintiffs repudiated their contract with us and refused to deliver to us for our manufacturing purposes any further amount of cork.    We were obliged to obtain our supply of granulated cork for our manufacturing purposes during the year 1889 from parties other than the

plaintiffs. We aver that the advance in value of the three hundred and forty tons of granulated cork which the plaintiffs failed to deliver to us according to their contract during the year 1889, between the price at which we were to receive said cork and the market value of the same was $5,904.03. We claim that there is due to us by the plaintiffs for breach of their said contract with us over and above the amount of $151.19, due by us to them, the sum of $5,752.84. We claim the last named sum from the plaintiffs, and will endeavor to recover it in this suit, with interest."

Before the trial, counsel for defendant notified the plaintiffs that at the time he would " offer evidence of the matters set out in the affidavit of defence, a copy of which I inclose, and will claim a certificate in his favor for $5,752.84, as therein stated."

At the trial counsel for defendant made the following offer :

" I propose to prove that there was a contract entered into on the tenth of January, 1889, for the purchase from the plaintiffs of all their supply of granulated cork that they should make during the year 1889, which would be needed by Mr. Blabon in his works, and that he was to have the right to take as much of the whole output, which would be about 350 tons, as the plaintiff would make in their works; that this cork was shipped under that contract, and that the plaintiffs refused to ship any further supply of cork ; that the loss by reason thereof to the defendant was at the rate of some $15 a ton in extra freight.

Objected to. An affidavit of defence cannot be substituted for a statement. A specific statement must be made. The statement in this case is not sufficiently specific. It refers to items of value of cork and freight charges.

Mr. Johnson stated that he only wished to prove the market value of this cork in Philadelphia.

The Court : I think the statement is sufficient for every purpose, unless you attempt to eke out the lower price of cork by showing that the difference was in freight. I don't think you can do that under the statement.

Mr. Gross : I renew my objection.

Objection overruled. Exception. [1]

When John C. S. Davis, a witness for plaintiff, was on the stand, he was asked this question :

Q. What was the value of granulated cork at the time you received notice from Arnold in January, 1889, that he would not deliver the cork?

Objected to. Objection overruled. Exception. [2]

The court refused under objection and exception to allow the plaintiffs to show what they sold granulated cork for during 1889. [3]

The court charged in part as follows :

" It comes down to a question of the view which you will take of what took place at the meeting where Mr. Davis and Mr. Arnold, the plaintiffs, and Mr. Blabon, the defendant, had a talk of what should be done for the year 1889. The first thing you want to ascertain is whether there was what the law calls a meeting of mind ; in other words, in the ordinary history of a contract a certain amount of negotiation takes place, and when that is over and men come to an agreement, their minds meet on a single point; one says, "you will do so and so," and the other, says, " I will do so and so," and the contract is closed.

" Of course, a discussion of this kind may be canceled and end in nothing, if either party fails to agree upon that precise point, or it may end, as it is intended to end, upon the two people making a final agreement, each one perhaps waiving something he had asked for and end in a compromise and come down to a point. That may take a long time or it may be done in a short time, but a discussion undoubtedly took place on that day, and according to the testimony of the plaintiffs, it ended in nothing ; they never came to any agreement. According to the testimony of the defendants, there was a plain, precise agreement for the year 1889. That is to say, according to the defendants' contention, he was to have the entire output of the plaintiff's place during the year 1889 at $25 a ton, put free on board the cars at Lancaster, the defendants to pay the freight from Lancaster to Philadelphia, or so much of that output as he might need in his business. He was to take until the latter part of the month, or the last of the month, or the end of the month, to let the plaintiffs know what the needs of his business would be.

" In my judgment, under that phraseology taken alone, [the

defendant had that entire month to make up his mind.] [7] Unless you can find something in the testimony, and I do not recollect anything to the contrary, the natural meaning of such words would be through the entire month. This is not in writing, and I am not interpreting a writing. I am merely explaining to you the use of those words. If your view of the English language is different, my instruction does not bind you as to the construction of that phrase. It seems to me that the natural construction of that language would be that the defendant had the entire month in which to let the plaintiffs know what his demands were to be. Of course, they could not exceed the output of the plaintiffs' place; of course, he could not ask for more than there was, but he could take so much of it as he might need at that price.

"There is a discrepancy in the testimony as to what the discussion led up to at this time. The plaintiffs said they had an offer of $30 a ton, $5 better than $25, and therefore wanted the defendant to come up to those terms, which the defendant would not do. The defendant, on the other hand, contended that that offer as stated to him by the plaintiffs was for $30 per ton not free on board, but $30 a ton delivered at the purchaser's place, and that the freight would about make up the difference, provided the defendant agreed to pay the freight on his goods, which he had not been in the habit of doing before.

"Undoubtedly, if you find there was this contract, as claimed here by the defendant, and if you find that the plaintiffs broke it, the defendant would have the right then to his damages, which damages are fixed; but if the defendant was able by any acts on his part to lessen his damage, he could not, of course, recover more than his actual damage. In other words, [whatever damage there was accrued at the date of the breach of this contract,] [8] it was not necessary to wait until the time called for in the contract elapsed; if it is broken it is broken, and the right to recover damages then accrues.

"Then comes the question whether this defendant, in obtaining these goods from other people, did lessen his damages, whether he made them any less than the difference between the price agreed upon in the contract and the market price at the date of the breach.

" You have heard from the evidence what he did pay. You have also heard what was the market price. The market seems to have been a limited market. That is to say, that this article was not one which was dealt in in a general way; there were only certain places you could get it.

" In regard to the freight, I will ask you to leave out of your mind, so far as the defendant is concerned, if you find in his favor, any question as to freight, because, for technical reasons, the defendant was called upon to give the plaintiffs a statement of what special matter he proposed to put in evidence, and in that statement there is not contained, in my judgment, any proper indication of the amount which the defendant had to pay out on account of the freights. But he does make the statement that he had to buy cork of other parties, and he had to pay for that cork $41 a ton.

" You can take all these facts into consideration. You will first consider whether there was any contract; you will then consider the damages, if there was such a contract, and you will find damages in the way I have indicated.

" If, on the other hand, you find there was no such contract, then, of course, the defendant is undoubtedly liable to the plaintiff's for the $151, or whatever the amount is, which was stated to you, which was the price of that amount of cork which was delivered in January.

" You should also take into consideration the question of how far the delivery of the cork in the month of January was an indication of the making of a new contract between these parties. The defendant says that this was made under the new contract and according to the price of the new contract; that is to say, for $25; that the defendant had to pay for that new cork $3.20 more than he paid for his cork before, inasmuch as he was paying for the freight from Philadelphia to Lancaster. The plaintiffs, on the other hand, say that was merely done as an accommodation, and indeed goes on further to say that it was done under the terms of the old contract.

" The evidence, as far as it appears here by the bills of lading and so on, seems to indicate that the defendant is right, at least in this part of his contention, that he paid the price of the new contract and not the price of the old.

" Those are the two sides of the case. If you find for the

plaintiffs you will find for this amount, $151. If, on the other hand, you find for the defendant, you will give him a certificate of the amount that he actually paid out, that is the difference between the alleged contract price and the market value of that amount, 340 tons of cork, on the day of the breach of the contract, unless you find from the evidence that what he bought cost him less than that, in which case you will find for the lesser sum.

" It will be one or the other of those two sums.

" The plaintiffs have asked me to charge you as follows :

" *First.* That if the jury find that there was a contract between the plaintiff and defendant, that the defendant can only recover the difference between the price contracted for and the lowest price paid for any 340 tons of cork bought by him during the year 1889, and if he fails to prove specifically what such price or prices were, he cannot recover the certificate he asks for, and the verdict must be for the plaintiff.

" I think I answered that point in my charge when I stated to you that he can recover the difference between the contract price and the market price, unless, as a matter of fact, his loss was actually smaller. [4]

" *Second.* If the jury find that any 340 tons of cork purchased by the defendant during the year 1889 were purchased at a like price, or less than the price at which the defendant alleges the plaintiff agreed to furnish the same, the defendant cannot recover and the verdict must be for the plaintiff.

I will have to ask counsel whether there is any evidence in this case to which that point is applicable. I do not recollect.

Mr. Gross : There is no evidence that they purchased 340 tons.

The Court : I do not recollect any evidence to which this is applicable. If it is not applicable I will have to refuse it on that ground. I do not want to give the jury points that are merely in the air. [5]

" *Third.* Under the pleadings and evidence, the verdict must be for the plaintiff. "

I refuse that point. [6]

The Court : Gentlemen, you have all the evidence before you. [You can take into consideration the price, $25, and then you have a right also to take into consideration a point

which I had forgotten, the precise article ; you must not forget the difference in the nature of the article.   Twenty-five dollars per ton for raw material is one thing and $25 per ton for finished product is another.   The evidence was that $25 a ton was paid for comparatively raw material.]   [9]

Mr. Johnson: And at Chicago:

Mr. Gross: And in Philadelphia:

The Court: You will take into consideration what that price was.

The second point I will refuse as not applicable, except, if you find, as a matter of fact, that these gentlemen did buy cork for a less amount than the contract price.   Whatever it is you will find for the lesser of the two amounts." [5]

Verdict for defendants with a certificate for defendants for $6,301.52, on which judgment was entered.   Plaintiffs appealed,

*Errors assigned* were (1) the admission of evidence, quoting offer and objection, but not the evidence admitted ; (2, 3) rulings on evidence ; (4–9) instructions of the court, quoting portions of the charge as above, and points and answers.

*William C. Gross, Francis S. Chapron* with him, for appellants.

*John G. Johnson,* for appellees.

PER CURIAM, February 8, 1892.

The first specification of error is not properly assigned, and if it had been it would not have helped the appellant, as the evidence was properly admitted.   A careful examination of the remaining specification fails to disclose error on the part of the court.   The error, if any, was with the jury.

Judgment affirmed.