## Morris *v.* Supplee, Appellant.

*Evidence—Custom—Contract.*

Where on a contract for the sale of cotton the terms are stated as " cash basis, note at 60 days from date of shipment of each 100 bales, interest added," it is proper to permit it to be shown that by a trade custom the words meant that the purchaser had the privilege of paying either in cash, or by a note drawn by himself to his order and indorsed by him, and which was the equivalent of cash.

*Contract—Sale—Breach—Measure of damages.*

Where the seller refuses to deliver and the buyer supplies himself be-

fore the contract date of delivery has arrived, the measure of damages to the latter is not the difference between the market price on the date of delivery and the contract price, but is the difference between the price at which the goods were actually bought and the contract price. In such a case the burden is upon the buyer to show at what price he had actually supplied himself with the goods.

Argued Jan. 6, 1904. Appeal, No. 183, Jan. T., 1903, by defendants, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1900, No. 643, on verdict for plaintiff in case of William McK. Morris and Edwin J. Morris, trading as Morris & Company, v. Charles J. Supplee and William M. Van Leer, trading as Supplee & Van Leer. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Assumpsit for breach of contract. Before AUDENRIED, J.

At the trial it appeared that on March 14, 1900, plaintiffs bought of defendants for future delivery 900 bales of cotton under the following memorandum in writing:

"PHILADELPHIA, Mar. 14, 1900.

"Sold to MESSRS. MORRIS & CO.

"For a/c of ourselves.

"Terms : Cash basis, note at 60 days from shipment of each 100 bales, interest added.

"Nine hundred (900) bales of Middling Cotton, at 8½c., landed Yardville, N. J. Southern weights guaranteed not to lose in excess of one per cent. in transit. Three hundred bales October shipment; 300 November shipment and 300 December shipment, shippers' option.

"SUPPLEE & VAN LEER."

Toward the end of October, the defendants shipped the plaintiffs 300 bales of cotton, but, on October 30, notified them that they could take it only upon payment of its contract price in cash, or upon the delivery of a sixty days' note for its price with interest added and with a " reliable indorsement or other reliable security." . The plaintiffs declined to accept this consignment or the remaining 600 bales on any terms as to payment except those specified in the sales note. As a result of this, they received no cotton whatever under their contract with the defendants.

After the time fixed by the contract for the delivery of the last lot of 300 bales had passed, Morris & Company brought this action to recover from Supplee & Van Leer, the sellers, damages for failing to deliver the cotton which they had agreed to supply.

Defendant offered to prove a trade-custom meaning to the words " terms, cash basis, note at 60 days from date of shipment of each 100 bales, interest added; " that such meaning is that the purchaser has the privilege of paying either in cash or by a note drawn by himself to his order, and indorsed by him, and which is the equivalent of cash. That is, that the maker's credit is of such good character at the time the note is given that it can be taken into the market and sold and cash obtained without the indorsement of the seller; and to follow that up by showing that the credit of the plaintiffs at the time when these notes would have been given was not such that they could have been taken into the market and sold for cash.

Objection that the words are not trade terms at all; that they are ordinary English words, and as such cannot be explained by any trade custom was sustained. [12]

Plaintiffs offered in evidence the official sales sheet of November 30, 1900, showing that the price of spot cotton middling uplands in New York on that day was ten and one fourth cents per pound and Middling Gulf, ten and one half cents per pound Objected to.    Admitted in evidence. [9]

The court charged in part as follows:

I charge you as a matter of law, under the undisputed evidence in the case, that there has been established a breach of the defendants' contract, and that therefore the plaintiffs have a right to recover damages. The question for your consideration is the amount of the damages which shall be awarded to the plaintiffs. The measure of the plaintiffs' damages is the difference between the price at which it was agreed this cotton should be delivered to them, eight and a half cents per pound, and the price which, on the last days of the months of October, November and December, 1900, cotton of the kind which was to have been delivered to them was selling, upon the terms which they were entitled to expect under this contract, in

the nearest available market to the place where they were carry-
ing on business and where this cotton was to have been deliv-
ered. [6]

Verdict and judgment for plaintiff for $7,872. Defendant
appealed.

*Errors assigned* were (6) portion of charge as above, quoting
it; (9, 12) rulings on evidence quoting the bill of exceptions.

*Francis S. Laws*, with him *Francis C. Adler*, for appellants,
cited : Lawrence v. Porter, 63 Fed. Repr. 62 ; Deere v. Lewis,
51 Ill. 254; Roberts v. Benjamin, 124 U. S. 64 (8 Sup. Ct.
Repr. 393) ; Lewis Cook Mfg. Co. v. Randall & Dickey, 62
Iowa, 244 (17 N. W. Repr. 507) ; Theiss v. Weiss, 166 Pa.
9 ; Hamilton v. Kirby, 199 Pa. 466 ; Warren v. Stoddart,
105 U. S. 224; White v. Tompkins, 52 Pa. 363.

The learned court fell into error of deciding that the inva-
riable measure of damages in cases where a seller declines to
furnish goods was the difference between the contract price
and the market price upon the day set for delivery.   Such a
conclusion is directly opposed to the whole theory upon which
damages are recoverable : Kountz v. Kirkpatrick, 72 Pa. 376 ;
Theiss v. Weiss, 166 Pa. 19; Pittsburg Sheet Mfg. Co. v.
West Penn Sheet Steel Co., 201 Pa. 150 ; Bussy v. Donaldson,
4 Dallas, 206 ; Forsyth v. Palmer, 14 Pa. 96.

The defendants should have been allowed to prove the trade
meaning of the terms "cash basis : " Carey v. Bright, 58 Pa.
70 ; Guillon v. Earnshaw, 169 Pa. 463 ; Gordon v. Little, 8 S.
& R. 533 ; Phœnix Iron Co. v. Samuel, 13 W. N. C. 50 ; Ham-
ilton v. Kirby, 199 Pa. 466; George v. Joy, 19 N. H. 544;
Wellauer v. Fellows, 48 Wis. 105 (4 N. W. Repr. 114).

*John G. Johnson*, for appellees.—The appellants could not es-
cape the consequences of their failure to deliver the cotton by
insisting upon its acceptance upon terms different from those
of the contract, viz : payment in cash or by a note with reli-
able indorsement.

The appellees were entitled to recover the difference in value
between the contract price and the market price at dates of
breach, there being no proof they had replaced the cotton at

any less price: Kountz v. Kirkpatrick, 72 Pa. 376; Zuck v. McClure, 98 Pa. 541.

There was no right to prove a trade custom or usage as to the meaning of the words "cash basis, note at 60 days from date of shipment of each 100 bales, interest added:" Coxe v. Heisley, 19 Pa. 243; Hartje v. Collins, 46 Pa. 268; Wetherill v. Neilson, 20 Pa. 448; Harris v. Sharples, 202 Pa. 243; Barnard v. Kellogg, 77 U. S. 383; Bigelow v. Legg, 102 N. Y. 652 (6 N. E. Repr. 107); Blackett v. Royal Exchange Assurance Co., 2 Cr. & Jervis, 244.

OPINION BY MR. CHIEF JUSTICE MITCHELL, Mar. 7, 1904:

Appellants sold to plaintiffs cotton for future delivery at an agreed price the terms being specified in the contract as "cash basis, note at 60 days from date of shipment of each 100 bales, interest added." The first question is upon the meaning of these terms. Appellants offered to prove that they had a trade meaning and to show what that was. The evidence was rejected. In this there was error. The words used as they stand by themselves, may be understood to mean that the parties have provided for alternative methods of payment either of which will be accepted as equivalent to the other, to wit: cash, or a note at sixty days with interest. But it is by no means beyond doubt whether such was the intended meaning. If it had been, the most natural and obvious expression would have been "terms, cash or note," etc. When the phrase "cash basis" was introduced it implied something which might be different from plain cash, and while the presumption is that what follows is intended to embody the alternative agreed upon, to wit: a note of the purchaser at sixty days with interest, yet the term "cash basis" is sufficiently ambiguous to be susceptible of another meaning and if it has acquired a general settled and commonly understood meaning with which the parties must be presumed to have used it, the defendant should have been permitted to show it.

It is argued that even if such a customary trade meaning were proved it would be bad as contradicting the plain terms of the contract. But this view overlooks the fact that the terms are not plain in the sense that they are not susceptible of more than one meaning, even though one meaning may be to some

extent at variance with the literal definitions of the words used. It is within the judicial knowledge of some members of the court, that in some branches of business in this state a cash sale means a sale to be paid for within thirty days, and that if a different contract is intended the custom is to use some additional word, such as "cash on delivery" (c. o. d.) "spot cash," etc., to indicate that delivery and payment are to be simultaneous. Yet it has never been held that such a trade custom is bad as contradicting the expressed terms of the contract.

The second question in the case relates to the measure of damages. The appellants accompanied their first shipment of cotton with a demand for payment in a manner which plaintiffs considered at variance with the contract, and such payment being refused appellants made no deliveries. After the contract time had expired the purchasers brought this suit for damages for the failure to deliver. It appeared at the trial that the plaintiffs had gone into the market from time to time during the running of the contract period, and bought cotton to take the place of that which the appellants had failed to deliver. The learned judge instructed the jury "that the measure of damages was the difference between the contract price and the prices prevailing for cotton sold on the same terms in the nearest available market to the place of delivery, at the several dates when the cotton should have been delivered." This under the circumstances was erroneous. There is no doubt that is the general rule, but it was inapplicable to the facts in this case.

When a vendor refuses to deliver goods sold the buyer may wait until the contract time of delivery has passed and then go into the market and purchase, holding the seller liable for any loss. In such cases the measure of damages is the difference between the contract price and any greater market price that the buyer has been compelled to pay, or in other words the actual loss to the buyer from the breach. The reason for this is very plain. The buyer is entitled to have the goods at the stipulated time of delivery. He is not bound to supply himself from the market before the contract date, for it may be that the seller will deliver at the last moment. (We are not now considering the case where the buyer elects to treat a refusal to deliver as a breach and brings suit at once.) But when the agreed date has passed the buyer has become entitled to im-

mediate delivery and may therefore supply himself from the market at the seller's expense for his actual loss. This, in ordinary cases, is the difference between the contract price and the market price he is compelled to pay.

But though the buyer is not bound to supply himself before- the contract date of delivery, even on a rising market, yet he is at liberty to do .so, taking the risk that he may pay more than the price for which he may hold the vendor, at the contract date of delivery. And there might be cases, as e. g., where the want of material might compel the stopping of a mill or factory, where the loss from a refusal to. deliver would be greater than the additional price paid, where he might hold the seller for a price even in excess of the market on the contract day. Such cases would be exceptional, the general rule being that if the buyer supplies himself before the contract date of delivery has arrived, he does so at his own risk that the market price at that date may be less than he has paid in the interim. The foundation of the rule is that he is entitled to compensation for his actual loss provided always that he keeps the loss as small as he reasonably can.

In the present case it was shown in the cross-examination of one of the plaintiffs that after the failure to deliver the first shipment of cotton they had supplied themselves by purchases from other parties, but at what price did not appear. This is the exact point decided in Theiss v. Weiss, 166 Pa. 9, where it having appeared that plaintiff had supplied himself with the goods, the defendant proposed to inquire at what cost, and the judge on objection excluded the evidence and charged that the measure of damages was the difference between the contract and the market price. It was held that this was error, and the true measure applicable to the circumstances was the difference between the contract price and the actual price at which the plaintiff obtained the goods to supply the default. Quoting from Arnold v. Blabon, 147 Pa. 372, where the court had held that if the plaintiff therein had lessened his damages by buying the goods (cork) at less than the contract price, he could only recover the lesser sum, GREEN, J., delivering the opinion of this court, said: "The ruling was manifestly correct, because while it is true that the ordinary rule of damages in such cases would have entitled the

defendant to recover the entire difference between the market value of the cork and the contract price, yet as the proof was that he had supplied himself with cork at a less cost than the market price, he could recover only for his actual loss. This is in accord with all the authorities above cited and is perfectly sound law—the rule of actual compensation for the loss of the goods to be delivered requires that the actual loss only should be allowed to be recovered." The same rule was again applied in Pittsburg Sheet Mfg. Co. v. West Penn. Sheet Steel Co., 201 Pa. 150, where it was said by our Brother FELL: " The object of the law is to compensate the party injured. He is entitled to this and nothing more, and in all cases compensation must be limited to the loss actually sustained. If the buyer purchases goods in place of those contracted for at less than the market value, and thus reduces the loss, he can only recover the actual loss."

The only difference between Theiss v. Weiss, and the present case is that there the court excluded the evidence while here the defendant was allowed to ask the question, but the plaintiff refused or evaded a direct answer. The judge thereupon assumed it as incumbent on defendants to show the quantity purchased by plaintiffs, and the time and price, and defendants having given no evidence on these points he treated the case as within the general rule and charged accordingly. This was error. The burden of proof was on the plaintiffs. They were entitled to compensation for their actual loss but nothing more. When it appeared in their own testimony that they had bought cotton to replace that which defendants had failed to deliver, it became part of their case to show that they had bought at a loss, and what that loss was. They could no longer rely on the market price at the last contract date of delivery as the measure of damages, for it had appeared that they had supplied themselves previous to such date. They could not charge the defendants with a higher price than that of the market on the contract date, but if they had bought for less, then their loss was less, and they were bound to show how much. The whole evidence on this point moreover was within their own knowledge and control exclusively. For all that appears in the case the plaintiffs may have bought at less than the contract price, and the defend-

ants' breach of the agreement may have thus resulted in a profit to plaintiffs. The burden was on them to negative this inference before they could be entitled to more than nominal damages: Lentz v. Choteau, 42 Pa. 435.

Appellants argue that the contract was divisible, having " First, a provision to deliver at 8½ cents per pound, cash basis, and second, an agreement to extend a credit of 90 days upon payment of six per cent interest; the contract to deliver and the contract to extend the credit being separate elements, and in nowise dependent upon each other. When, therefore, the defendants tendered the cotton at the contract price for cash, the agreement to make delivery was fulfilled. The only breach was the refusal to grant the credit, which was equivalent to a refusal to loan the money at the legal rate of interest. As the plaintiffs had contracted to pay this interest, the breach was technical, and the damages were nominal.

" The theory upon which this is founded is, that the plaintiffs could have gone elsewhere, and by the payment of six per cent interest have secured the money, and paid the purchase price in cash. This was in accord with their legal obligation to reduce the damages as much as possible."

This argument, however, rests upon an unwarrantable splitting of the contract which was single. Plaintiffs were entitled to a delivery of the cotton on the specified terms. A refusal to deliver except on different terms imposing an additional burden on the buyer was equivalent to an absolute refusal. The subject of the contract was the cotton, the terms were merely an incident, important certainly but still an incident. The buyer might have been able to borrow the money and pay cash or he might not. He was under no obligation to try, but could stand on his contract, the substance of which was that the seller would deliver him the cotton on the day specified. When the seller failed to do so, the buyer by the well settled rule had the right to supply himself and look to the seller to compensate his loss.

Judgment reversed and venire de novo awarded.