## Burton *v.* Miller, Appellant.

*Contract—Sale—Damages—Purchasing in the market—Substitution of goods in hand.*

Where a vendor refuses to deliver goods sold, the vendee may go into the market and purchase other goods, and charge the vendor with the difference; but he is not obliged to do this if he has on hand other goods of the same kind which he had previously purchased at a less price. In such a case he may substitute these goods for those which the vendor failed to deliver, and charge the latter with the difference between the price paid for them and the contract price of the goods not delivered.

Argued Jan. 6, 1910.  Appeal, No. 188, Jan. T., 1909, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1907, No. 93, on verdict for plaintiff in case of E. P. Burton & Company, to use of E. P. Burton Lumber Company, and E. P. Burton Lumber Company v. Frank Miller, trading as the Frank Miller Lumber Company.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Assumpsit for goods sold and delivered.  Before MARTIN, P. J.

The court charged in part as follows:

In this case it appears from the evidence that the Burton Lumber Company for a certain price agreed to deliver to the

Miller Lumber Company a quantity of lumber at Bridgeport. There was evidence that the contract was rescinded, that its terms were changed and that it was broken.

There were two cargoes of lumber delivered by the Burton Lumber Company to the Miller Lumber Company, one loaded on the vessel "Flora Rogers," and the other on the "Humarock." This lumber was not paid for by the Miller company.

In defense of their refusal to pay it is claimed that under the terms of the contract between the E. P. Burton Lumber Company and the Frank Miller Lumber Company, the Burton Lumber Company had agreed to supply a fixed amount of lumber at a certain rate; that when the market price commenced to rise the Burton company refused to deliver the balance of the lumber called for under the terms of the contract, and if the Miller company had received the lumber that they could have sold it at market rates, and therefore they suffered a loss. There was evidence that the Miller company purchased lumber of the same kind from the Atlantic Coast Lumber Corporation at a higher price than that which they agreed to pay the Burton company, and it was claimed that the Burton company should be compelled to make good the difference in price between that at which they agreed to sell and the price paid to the Atlantic Coast Lumber Corporation, which it is alleged is less than the market prices at that time for lumber of the same kind. [Assuming that the Miller company have proved that the Burton company broke the contract, they have not offered legal evidence of any damages suffered by reason of that fact. If they had purchased the lumber to take the place of lumber they were entitled to receive from the Burton company at market prices, or if it had been shown to be impossible to obtain the same kind of lumber, or if the Atlantic Coast Lumber Corporation's lumber was purchased in substitution of the lumber with which they were required to complete outstanding contracts the question would have been referred to you to determine whether or not the contract had been broken by the Burton company and whether the damages to the Miller Lumber Company was more than

the Miller company owe the Burton company for the two cargoes.] [1] [The view I take of the evidence is that there is no testimony to warrant you in assessing damages to the Miller company by reason of the fact, if it is a fact, that the Burton company broke the contract. They did not buy lumber in place of that which is claimed to be due them under the contract with the Burton company, and the lumber which was purchased by them from the Atlantic Coast Lumber Corporation had no relation to this contract, was contracted for independently and its alleged substitution was a mere matter of bookkeeping.] [2]

Verdict and judgment for plaintiff for $8,396.14. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*Harry M. McCaughey,* with him *William S. Furst,* for appellant.—In Pennsylvania the rule of law which obtains in respect to the measure of damage recoverable for the breach of contract, is the amount necessary to put the injured party in the same position as if there had been no breach. It is not the amount required to put the parties in the same position as if there had been no contract. Hence, the measure of damage for the failure of a vendor to deliver an article is the difference between the market value at the time and place of delivery and the contract price. This rule does not apply when the vendee purchased the article to supply the vendor's breach at less than the market value. In this case, the vendee can recover no more than his actual loss: McHose v. Fulmer, 73 Pa. 365; Fessler v. Love, 43 Pa. 313; Saxe v. Penokee Lumber Co., 159 N. Y. 371; Lawrence v. Porter, 63 Fed. Repr. 62; Marsh v. McPherson, 105 U. S. 709; Creve Cœur Lake Ice Co. v. Tamm, 90 Mo. App. 189; Theiss v. Weiss, 166 Pa. 9; Morris v. Supplee, 208 Pa. 253; Lentz v. Choteau, 42 Pa. 435.

*Sharp, Alleman & Moise,* for appellee.—Where the seller refuses to deliver and the buyer supplies himself before the

contract date of delivery has arrived, or otherwise than by purchase in open market, the measure of damages to the latter is not the difference between the market price on the date of delivery and the contract price, but is the difference between the price at which the goods were actually bought and the contract price. In such a case, the burden is upon the buyer to show at what price he actually supplied himself with the goods: Theiss v. Weiss, 166 Pa. 9; Morris v. Supplee, 208 Pa. 253.

OPINION BY MR. JUSTICE POTTER, February 14, 1910:

In this case the vendor sought to recover the price of lumber delivered, and the vendee sought to recoup damages for non-delivery of other lumber which he claimed was due under the contract. The defendant maintained that the plaintiff had agreed to supply a fixed amount of lumber at a certain rate; that the market price advanced, and the refusal of the plaintiff to deliver the balance of the amount purchased, made it necessary for the defendant to draw upon and make use of other lumber of the same kind and quality, which he had purchased at a higher price than that at which the plaintiff had agreed to supply the lumber. The trial judge declined to permit the jury to determine whether or not the contract had been broken, and if so the amount of the damages suffered by the defendant, because the defendant company did not actually go out and purchase the lumber which it needed to make good the shortage, but instead of so doing, it made use of other lumber which it had on hand, which it had previously purchased. In other words, the trial judge assumed that there was a duty upon the defendant to go into the open market and actually purchase lumber, before it could be legally entitled to claim that it was damaged by the failure of the plaintiff to deliver lumber under the contract. We think this was a misconception of the proper rule.

In Morris v. Supplee, 208 Pa. 253, Chief Justice MITCHELL said (p. 258): "When a vendor refuses to deliver goods sold the buyer may wait until the contract time of delivery has passed and then go into the market and purchase, holding the

seller liable for any loss.   In such cases the measure of damages is the difference between the contract price and any greater market price that the buyer has been compelled to pay, or in other words the actual loss to the buyer from the breach." Then he goes on to point out that the buyer is also at liberty to supply himself before the contract date of delivery, taking the risk that he may pay more than the market price may be at the contract date of delivery.  And he sums it up by saying: "The foundation of the rule is that he is entitled to compensation for his actual loss, provided always that he keeps the loss as small as he reasonably can."

In the present case, as we understand the evidence, it appears that the defendant happened to have on hand a supply of similar lumber, previously purchased, which would answer the required purpose, and while he was under no obligation to do so, yet he did substitute that for the supply which he claimed under the contract was due him from the plaintiff.  The lumber which he thus substituted cost him less than the market price of the same lumber at the time of substitution, and if the plaintiff company was liable at all, it was manifestly to its advantage to have this lumber substituted at the reduced price, rather than that the defendant should go into the open market and purchase other lumber at the then prevailing price.  Certainly, the plaintiff company can have no just cause of complaint by reason of the fact that the defendant used other lumber, previously purchased at a less price, to make up for the alleged shortage upon the part of the plaintiff.

The defendant should not have been called upon to forego any advantage when he made use of the lumber which he already had on hand.  Presumably that lumber was worth the market price which prevailed at the time of the breach of the contract which required the substitution.  At any rate, we are unable to see any good reason why the fact that he made use of other lumber previously purchased, should in any way preclude him from claiming damages for a breach of the contract upon the part of the plaintiff.  In Mechem on Sales, sec. 1738, what seems to us a very reasonable rule

is thus laid down: "It is not essential to the operation of this rule giving the difference between the contract and the market price, that the buyer shall have actually gone into the market and bought other goods to supply the place of those not delivered." The writer then cites this extract from Saxe v. Penokee Lumber Co., 159 N. Y. 371: "It would not advantage the defaulting party if he should do so; for, if he buys at the market value, the result to the other party is the same as if he simply proved the market value." Compensation for the actual loss sustained, is what the injured party is entitled to recover.

This case must go back to be submitted to the jury for them to determine as a matter of fact whether the plaintiff committed a breach of the contract. If so, then the defendant is entitled to recoup the loss sustained thereby. As a rule this loss would be the difference between the contract price and the market value of the lumber at the date of the breach of the contract. In the present case the defendant has kept the loss considerably below what it would otherwise have been, by the substitution of lumber previously purchased at less cost than the market price at the date of the breach, and has thus reduced the amount of the damages below what it would have been under the usual rule.

The first and second assignments of error are sustained, and the judgment is reversed with a venire facias de novo.