# Ætna Explosives Company *v.* Diamond Alkali Company, Appellant.

*Res judicata—Parties—Evidence—Cause of action.*

1. The facts found in one suit, will not be reconsidered in a later one between the same parties in regard to the same subject matter, whether the evidence in the two actions was or was not the same.

2. A new suit for the same cause of action as that specified in a prior one will not be defeated simply because of a claim to measure the damages in a different way from that specified in the first suit.

*Contract — Future deliveries — Separate requisitions—Notice— Cancellation of contract.*

3. Where a contract for materials to be furnished at regular intervals, provides that notice of the quantity required must be given a certain length of time prior to the dates fixed for delivery, the fact that a part of the materials, previously requisitioned under the same contract, had been delivered although specified too late, will not establish a mode of performance preventing the vendor from denying the vendee's right to recover because of a failure to deliver the whole quantity specified in later requisitions, which were also made at too late a date.

4. Where a contract provides for thirty days' notice of the deliveries required for each ensuing month, the notice must be given thirty days before the first day of the particular month.

5. Under such circumstances the goods purchased may be delivered at any time during the ensuing month.

6. The reasons given by a vendor for cancelling a contract so far as relates to future deliveries, cannot affect his rights in a suit for a failure or refusal to have prior deliveries made.

*Contract—Custom—Method of dealing.*

7. Parties are assumed to deal according to the customs of the business respecting which they contract.

*Contract — Tender of rescission—Effect of—Acceptance—Damages—Measure of damages—Custom.*

8. A tender of rescission by one party to a contract entitles the other to either accept or refuse to accept it, and he will be bound by the election he makes.

9. Where a tender of rescission is made and accepted, and the other party brings suit for the anticipatory breach, the damages must be measured as of the date of acceptance.

10. Damages for a breach of contract to supply materials, must be measured as of the date when a new contract therefor might and ought to have been made.

11. The measure of damages for a breach of contract must be according to the lowest standard reasonably applicable.

12. If one injured by a breach of contract for the furnishing of materials, does not choose to purchase others to make good the default, as required by the custom of the business, he cannot recover a greater sum than he would have been entitled to receive had he purchased the materials.

Argued April 17, 1923. Appeal, No. 58 and 80, Oct. T., 1923, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1919, No. 1217, on verdict for plaintiff, in case of Ætna Explosives Co., Inc., v. Diamond Alkali Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of written contract. Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $37,154.88. Plaintiff and defendant appealed.

*Errors assigned* were various instructions and rulings, quoting record.

*Wm. M. Robinson,* and *Edwin W. Smith* of *Reed, Smith, Shaw & McClay,* with them *Maynard Teall,* for Diamond Alkali Co.—By instituting its first suit, plaintiff converted its right to receive deliveries of goods into a right to receive payment of damages, and thereafter could not recover on averments that defendant breached the contract by failing to make deliveries at the times agreed upon: Roehm v. Horst, 178 U. S. 1; Central Trust Co. v. Auditorium Assn., 240 U. S. 581; Barber Milling Co. v. Baking Co., 273 Pa. 90; Echard Coal & Coke Co. v. Mudge, 234 Pa. 86; Arnold v. Blabon, 147 Pa. 372.

Evidence of the facts and circumstances surrounding the parties and the transaction should have been received for the purpose of assisting the court to construe the contract: McMillan v. Titus, 222 Pa. 500; Wilson v. Peerless Co., 240 Pa. 473; Bubb v. Oil Co., 252 Pa. 26; Hocking v. Hamilton, 158 Pa. 107; White Heat Products Co. v. Thomas, 266 Pa. 551; Myers' Est., 238 Pa. 195; Barnhart v. Riddle, 29 Pa. 92.

The trial court was right in ruling that plaintiff could not recover for shortages in deliveries during February, March, April, May, June and July: Zeller v. Wunder, 36 Pa. Superior Ct. 1; Benninger v. Hankee, 61 Pa. 343; Armstrong v. Latimer, 165 Pa. 398.

If defendant was liable at all, the measure of damages adopted by the trial court was correct: Zuck v. McClure, 98 Pa. 541; Lake Shore & Michigan Southern Ry. v. Richards, 152 Ill. 59.

*B. J. Jarrett,* of *McCook & Jarrett,* for Ætna Explosives Co.—The trial court erred in disallowing plaintiff to recover for deficiencies in defendant's deliveries of soda ash during the months of February, March, April, May, June and July: Goff-Kirby v. Coal Co., 31 Pa. Su-

perior Ct. 60; Anspach v. Heft, 57 Pa. 326; McKay v. McKenna, 173 Pa. 581; McKenna v. Vernon, 258 Pa. 18; Mayer Bros. Co. v. Sterilizer Co., 258 Pa. 217; Kelley Brock Co. v. Supply Co., 32 Pa. Superior Ct. 408; Ice Co. v. Lake Lodore Imp. Co., 232 Pa. 293; Elk Textile Co. v. Cohen, 75 Pa. Superior Ct. 478; Bonnert v. Ins. Co., 129 Pa. 558.

Where a party makes specific objections to the sufficiency of performance, he waives all others: Ice Co. v. Lake Lodore Co., 232 Pa. 293; Morris v. Supplee, 208 Pa. 253; Delmont Coal Gas Co. v. Alkali Co., 275 Pa. 535; Roehn v. Horst, 178 U. S. 1.

The buyer is not bound to go into the market to supply himself on notice of breach from the seller: Morris v. Supplee, 208 Pa. 253.

The plaintiff was entitled to recover in the present suit its damages for the breach of the entire contract, the prior suit having been discontinued: Alcorn v. Ward, 262 Pa. 136; Findley v. Keim, 62 Pa. 112; Speirer v. Laundry Co., 56 Pa. Superior Ct. 323.

Evidence of attending circumstances is permissible in the construction of a contract only in cases of ambiguity: Diamond Alkali Co. v. Explosives Co., 264 Pa. 304.

Opinion by Mr. Justice Simpson, May 14, 1923:

On October 15, 1915, plaintiff and defendant entered into a contract, by which the latter agreed "to manufacture for and sell" to the former, and it agreed to buy and pay for "buyers'" entire requirements [of light soda ash] during 1916; minimum quantity 180 tons per month and maximum 250 tons monthly......Buyers must give sellers at least 30 days' notice of their requirements for each ensuing month......There are no understandings or agreements relative to this contract or its subject matter that are not fully expressed herein."

After making a number of deliveries under the contract, defendant herein rescinded it and filed a bill in equity averring that although the present plaintiff was

only entitled to obtain soda ash for its own business, it had nevertheless wrongfully specified a much larger quantity and received and sold the surplus; this defendant prayed should be accounted for and the profits, if any, paid to it. The court below so decreed, but on appeal we reversed and dismissed the bill (Diamond Alkali Co., v. Ætna Explosives Co., 264 Pa. 304), deciding that the word "requirements," as used in the contract, meant the quantity plaintiff required defendant to deliver, which must be at least 180 tons per month and not exceed 250 tons, and that plaintiff could do what it pleased with the amount actually received.

Pending the determination of that case, plaintiff herein brought an action of assumpsit against defendant, alleging a wrongful breach of the contract; a statement of claim and an affidavit of defense were filed, but nothing further was done looking to a trial of the issues thus raised.

Our opinion in the equity case was not filed until subsequent to the date named in the contract for final delivery; shortly thereafter, and without discontinuing its previous suit, plaintiff brought the present action on the same contract, seeking to measure its damages for the failure to deliver the installments specified,—as well in the months which preceded as in those which followed the cancellation,—by the difference between the contract and market prices on the last day of each month. Subsequently, and before trial of the present suit, the first action of assumpsit was discontinued.

In the instant case the trial judge charged the jury that plaintiff was entitled to a verdict; that since it had not given due notice of its requirements for the months prior to the cancellation of the contract, it was not entitled to damages for defendant's failure to transmit the full quantity then specified, but could recover for the refusal to deliver the tonnage called for during the succeeding months, measured as of the date when plaintiff began its first suit. Under this ruling, it obtained a

verdict, and from the judgment thereon these cross appeals were taken; both of them will be decided in this opinion.

Sixteen of defendant's assignments of error complain that the court below erred in not allowing it to present testimony for the purpose of inducing the jury to give to the contract a different construction from the one reached by this court in the equity suit. It is not necessary to decide how much of this proposed evidence would have been admissible if it had been offered in that case; the parties to the two controversies being the same, the conclusion there reached is res adjudicata, and cannot be reconsidered in the present suit because of facts which were, or might have been but were not, pleaded and proved in the previous one: Myers v. Kingston Coal Co., 126 Pa. 582; State Hospital for Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29.

The only other point raised by defendant is that recovery cannot be had in this case, because plaintiff, by its first suit, in effect accepted defendant's tender of an immediate rescission, and sought to recover its damages as of that date; whereas the present action is based on the theory that the contract continued in force until the expiration of the term named in it, and plaintiff seeks to measure its loss, for each month's failure to deliver, as of the end of that month. This is a matter of no moment, however, for defendant's attempt to rescind by the letter of May 25, 1916, is pleaded in both cases; in each plaintiff alleges it "protested against such action on the part of the defendant and made demand upon defendant to honor its requisitions for the [monthly] delivery of said soda-ash;" and in its affidavit of defense in the present case defendant avers "the cause of action set forth in [it] is the same cause of action for which" the prior suit was brought. It follows that even though the method for measuring the damages in the second suit may be different from that which would have applied to the first, this cannot result in depriving plaintiff of all damages, es-

pecially where, as here, on defendant's own showing, it is liable, as a matter of law, in exactly the way the trial judge ruled.

Plaintiff's first complaint is that although it did not give to the defendant, during any of the months prior to the cancellation of the contract, "at least 30 days' notice," before the beginning of the ensuing month, of its requirements for that month, yet as the latter, without objection, received the notices given, and made partial deliveries during each of those months, it cannot now be heard to allege it was not notified in time. The difficulty with this claim is that defendant was not required to object because the requisitions were sent too late, at no time actually accepted them as a compliance with the contract, and never fully honored any of them. Only a part of the quantity asked for was sent, and plaintiff did not complain of this until months afterward. Under such circumstances, it cannot be said that a mode of performance was established by the acts of the parties, by which this or any other requirement of the contract was waived; on the contrary, it only shows that defendant sent what it chose and plaintiff accepted what it could get.

Two other questions are suggested by plaintiff as to this phase of the case. (1) Was it necessary, in order to make the notices effective, that they should have been given at least thirty days before the beginning of the month to which they related? As admittedly defendant had the right to deliver at any time during the month, on the first day as well as on any suceeding one, it is clear the thirty days clause was properly applied to the first day of the month when delivery was to be made. (2) Is defendant precluded from objecting to the delay in giving the notices, because it did not so state in its letter of cancellation? The contract was not cancelled for these earlier months, however; during them it had already been fulfilled or was unfulfilled, and nothing but

an agreement, express or implied, could have affected that status.

The final question raised is whether or not the court below erred in fixing the date of plaintiff's first suit as the time when its damages should be measured? When, by its letter of May 25, 1916, defendant attempted to rescind the contract, plaintiff had the option of accepting or refusing to accept the tender thus made (Zuck v. McClure & Co., 98 Pa. 541; Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90), but could not do both. What it did was to bring that first suit, before the times fixed by the contract for the later deliveries, and in its statement of claim (after reciting the contract, and defendant's failure to deliver the whole amount requisitioned during the months prior to the letter of May 25, 1916), averred that "by reason [thereof] plaintiff has and will sustain loss and damage in the sum of $150,000, being the difference......plaintiff has been and will be required to pay to secure [the soda-ash] upon the market." It now says that thereby it only declared for the insufficient deliveries prior to cancellation; but if so why was this referred to, why was a gross sum claimed instead of the exact damages (which could then have been accurately measured), for the deficiencies during those earlier months, and why was the loss plaintiff *"will* sustain" and the amounts it *"will* be required to pay" to secure soda ash for the later months, referred to at all? No other answer is possible than that therein plaintiff sought to recover also, by way of an anticipatory breach, for the refusal to deliver during the months after cancellation, which effectually ended all right in defendant to deliver during that period, though the condition of the market might have made it profitable to do so, and in plaintiff to demand delivery, no matter how great its needs might become.

Nor was there error in the manner of submitting this question to the jury. Plaintiff's evidence was to the effect that, at the time of the breach, it could not have

made a contract for the balance of the term, but there-
after, from time to time, would have been compelled to
purchase from jobbers the soda ash it needed, and hence
claimed to recover the difference between the contract
and market prices at the end of each particular month,
producing testimony to enable this to be determined.
Defendant's evidence tended to show that, by the custom
of this business, plaintiff could and should have made a
contract with some manufacturer of soda ash for the
quantity which was to have been delivered during the
balance of the term; what it would have had to pay had
it pursued this course; that some manufacturers would
not sell to jobbers at all, and the rest only at greatly in-
creased prices from those at which they would sell to
users; and what was the market price at the end of each
month.

No complaint is now made regarding the admission or
rejection of evidence affecting this question, and the trial
judge left to the jury to decide what plaintiff's loss was,
telling them that if they should find there was a control-
ling business custom, they should be governed by it in
fixing the amount of their verdict, but if not, then upon a
consideration of all the other evidence they should deter-
mine how much plaintiff was damaged. We see no error
in this; parties are assumed to deal according to the
customs of the business respecting which they are con-
tracting (Franklin Sugar Refining Co. v. Howell, 274
Pa. 190), and where it can be done, as here it could if
defendant's evidence is believed, it is "entitled to have
damages assessed as at the date when a fresh contract
might and ought to have been made" (Benjamin on
Sales, 6th edition, 1106), for only in this manner can the
damages be measured, as they must be, according to the
lowest standard reasonably applicable: Arnold v. Bla-
bon, 147 Pa. 372; Franklin Sugar Refining Co. v. How-
ell, supra. Had plaintiff concluded to purchase the
quantity of soda ash to which it was entitled under the
contract, it would have been required to follow the cus-

tom, if by so doing a minimum of loss would result; it cannot recover more because it chooses to sue for damages without purchasing.

The judgment of the court below is affirmed.