PARIS OIL & COTTON COMPANY V. CARSTENS PACKING COMPANY.

Decided March 24, 1910.

Contract—Sale—Shipment—Compliance.

Having agreed to sell and ship to a buyer in October and November four tank cars of cotton seed oil, "buyers tank basis," at times designated in letters of instruction, in bulk in .tank cars to be furnished by buyer or in barrels if directed, the seller shipped two cars in barrels as directed in November. The buyer failed to direct further shipments in barrels or to furnish tank cars for the other two cars until December 26, when the seller gave notice of its intention to treat the contract as terminated. Held:

(1) The contract being for shipment in October, the seller was not in default in its performance as to the two cars not shipped, having been furnished no tanks or directions to ship in barrels within those months.

(2) If the words "buyers tank basis," by the usage of trade meant cars containing sixty barrels of oil in bulk, the order by the buyer to ship in barrels released the seller from the obligation to ship that amount in a car where the shipment in barrels could not contain that amount if the car was loaded properly and in accordance with the carriers regulations which forbade piling one barrel upon another in the car.

(3) A rule of the "Cotton Crushers Association" as to the time within which the seller of oil must give notice of his intention to treat the contract as at an end if the buyer, bound by his contract to furnish tank cars for "immediate" "quick" or "prompt" shipment as such terms were understood by the trade, fails to do so, did not apply to a contract to furnish them, but not specifying such "immediate, quick or prompt" delivery, and the seller did not, by failing to act within the time specified, lose his right to treat the contract as at an end by reason of the buyer's failure to furnish the cars.

(4) Being not in default as to the two cars of oil which it refused to ship, the seller could be held liable only for delay in shipment of the two sent, and for damages by failure to follow the buyer's directions in routing them.

Appeal from the District Court of Lamar County. Tried below before Hon. T. D. Montrose.

*Burdett & Connor* and *Lightfoot, Long & Wortham,* for appellant.

*Dudley & Dudley,* for appellee.

WILLSON, CHIEF JUSTICE.—The appeal is from a judgment in favor of appellee against appellant for the sum of $925, as the damages suffered by the former as the result, as alleged, of a breach by the latter of its contract to sell and deliver to the former, f. o. b. cars at Paris, certain cotton seed oil.

In its petition the packing company alleged that on or about October 24, 1905, it entered into a contract with the oil company whereby the oil company "sold and agreed to ship to plaintiff four cars bleachable prime summer yellow cotton oil at and for the price of twenty-one cents per gallon, buyers' tank basis, f. o. b. Paris, and if shipped in barrels three cents per gallon additional. The first car to be shipped immediately. The other three cars to be shipped in November and December, 1905. The second car to be shipped November 17, 1905;" that the oil company negligently failed to ship the first car until November 13, 1905, and negligently failed to ship

the second car until November 30, 1905, and negligently failed to route said cars as directed; that as a result of such negligence the first car did not reach it until December 30, 1905, and the second car did not reach it until January 27, 1906; that the oil company wholly failed to ship the other two cars; and that as a consequence of the delay in the shipment of the two cars and the failure to ship the other two, it was compelled to buy other oil to its damage in the sum of $991.16. The packing company further alleged in its said petition that the two cars shipped by the oil company were shipped from Corsicana, instead of from Paris, resulting in its having to pay $21.60 more as freight than it would have had to pay had the shipment been made from Paris; and that neither of the cars shipped contained the quantity of oil it should have contained, and that in paying the oil company's draft covering the shipments it paid on one car $15.07 and on the other $18.85 more than it should have paid. In its answer the oil company, after pleading a general denial, specially plead that the sale made by it to the packing company was with reference to rules of the Interstate Cotton Seed Crushers' Association set out in the answer; that it had complied with its undertaking; that the four cars of oil sold by it to the packing company were to be shipped during the months of October and November, 1905; that the packing company was to furnish tank cars for the shipments, or at its (the packing company's) option have same shipped in barrels by paying three cents additional to the price per gallon if shipped in tanks; that as to two of the four cars the packing company exercised its option and directed same to be shipped in barrels; that said two cars were so shipped; that the packing company failed to exercise its option to have the remaining two cars shipped in barrels during the month of November, 1905, and failed to furnish tanks for the shipment thereof during the month of November, 1905, but thereafterwards demanded that same be shipped in barrels; that if it was true that the cars shipped by it during the month of November contained less oil than the minimum carload weight, it was also true that all the oil which could be loaded in the cars in barrels, without placing the barrels one upon another, which would have been unsafe and likely to cause damage to the shipment, was loaded therein; and that the rules of the railway company receiving the shipment, and the general custom of such carriers, forbid stacking the barrels one upon another. In supplemental petitions the packing company alleged that the contract covering its purchase of the oil was made with it through the oil company's agents and brokers, Johnson, Lieber & . Co., of Tacoma, Washington, and was evidenced by letters and telegrams and an order accepted by the oil company, said order being set out *in haec verba* in one of said supplemental petitions; and further alleged that a tank of oil was understood by the parties to the contract to be 125 barrels.

The trial was before the court without a jury. The record does not contain the trial judge's findings as to the facts and conclusions as to the law.

*After stating the case as above.*—We sustain as specified the thir-

teenth assignment, and will reverse the judgment because it is not supported by evidence in the record.

The order given by appellee for the oil was as follows:

"Johnson-Lieber Co.,
    "Merchandise Brokers,                    Tacoma, Washington,
        "Manufacturers' Agents.    For Paris Oil & Cotton Co.,
"W. F. Saul, Manager.        .    ·          Paris, Texas.
"Order No. 1865.                    Tacoma, Wash., Oct. 24, 1905.
    "4 cars Bleachable Prime Summer Yellow Cotton Oil, 21c.
                        "Buyers tank basis.
                        "F. O. B. Paris.
    "If shipped in barrels 3c. per gallon additional.
        "Terms—Net cash, sight draft against B/L.
        "Routing of shipment—St. L. & S. F., Burlington & N. P. Ry.
        "Time of shipment—See letters of instruction 21st and 24th
            insts.
        "Insurance—
        "Special conditions and remarks—"          .

It will be noted that the order refers for specification as to the time when the oil was to be shipped to letters of instruction dated October 21 and October 24, 1905. The letter of October 21 is not a part of the record on this appeal. The letter of October 24 referred to, from the Johnson-Lieber Co. to appellant was as follows: "We now inclose you order for the Carstens Packing Co., this city, as per your wires of the 21st and 24th insts., respectively. We today instructed you to ship first car immediately in barrels at 3c. additional, buyers tank basis. Remaining three cars are awaiting your adviser as to possibility of obtaining tank cars. Immediately after receipt of your wire we shall telegraph you Carstens Packing Co.'s decision and instructing you how to ship."

It will be noted that the letter specified a time for the shipment of only one car—and that one immediately and in barrels. The testimony was that it required about one week for a letter to go from Tacoma to Paris. By the rules of the Interstate Cotton Seed Crushers' Association, with reference to which both parties seem to treat the contract as having been made, immediate shipment meant within five days. If it required a week for the letter to go from Tacoma to Paris appellant received same about October 31. So the first car should have been shipped by appellant not later than November 5. It was shipped November 13.

The second car was ordered by letter dated November 17, to be shipped in barrels as soon as possible after its receipt. Allowing one week for the letter to reach appellant, and five working days thereafter in which to make the shipment, the second car should have been shipped about November 29. It was shipped November 30.

Not until January, 1906, after it had been advised by the oil company that, as it construed the contract, it was for October and November shipments, did the packing company order the shipment to it of the cars remaining undelivered under the contract.

Carstens, president of the packing company, testified that "all the cars should have been shipped before the end of November, 1905." Leclercq, secretary of the oil company, testified that the contract was for October and November shipments. There was no testimony to the contrary. Therefore we think it must be said that the contract proven was for oil to be shipped in October and November, 1905.

The packing company had a right to demand that the oil be shipped out loose in tanks; but in the event it required the shipment to be so made, it was to furnish the tanks. It furnished no tanks. It also had a right to demand that the oil be shipped out in barrels, instead of in tanks. It demanded that two cars be so shipped during the life of the contract. The two cars it directed to be so shipped were so shipped. It would seem, therefore, that the oil company had not breached its contract in so far as it was thereby obligated to ship during the months of October and November oil as specified therein. But appellee contends that the two cars shipped out in November should have contained 12,500 gallons, whereas they contained 6040 gallons less than that quantity, or 6250 gallons only. This insistence is based on the contention appellee makes that the contract was for four "tank cars" of oil. The contract was for four cars, "buyers tank basis." The testimony was that "a car" was sixty barrels, and that a "tank car" was 125 barrels, of fifty gallons each. The words "buyer's tank basis," a witness testified, meant "that the price is made and the buyer furnishes the tanks; that is all that 'buyer's tank basis' means—simply buyer is to furnish tanks." It may be conceded that the contract should be construed to have meant that appellee, had it furnished the tanks, was entitled under the contract to have had as many as four filled and shipped out by the oil company. But, it having failed to furnish tanks, and having exercised its option to have the oil shipped in barrels, when it directed the shipment of "a car" of oil in barrels, was it entitled to demand that in loading the car the oil company should place 125 barrels therein? We think not. The testimony was that it was not safe in loading a car to place barrels one upon another, and that carriers engaged in the transportation of oil would not permit a car to be so loaded. The testimony further was that loaded otherwise a car ordinarily would not contain more than fifty-nine or sixty barrels. When appellee directed appellant to ship out "a car" of oil in barrels we think it must be held to have meant a car loaded in accordance with the custom of the trade and the rules of the carriers who were to transport it. But appellee further contends that, notwithstanding the contract was for shipment of oil to be made in October and November, and notwithstanding it did not order the oil to be shipped during those months, it nevertheless was entitled in January, 1906, when it made same, to demand of appellant that it ship the part remaining undelivered under the contract. This insistence is based on its contention that appellant had waived its right to treat the contract as at an end by its failure to comply with a rule of the crushers' association, requiring it "within twenty-four hours after the expiration of the contract time," to notify appellee by registered mail of its intention to so treat the contract. The testimony showed that

notice of such an intention on the part of appellee was not given until December 26, 1905, and that the notice then given was not by registered mail. The rule referred to was as follows: "Specified shipments—Tank cars shall be forwarded by buyers in such time that under the ordinary course of transportation they shall reach the seller in time to allow him to make the delivery as per contract. In case the buyer does not ship the empty tank cars as specified in the three preceding paragraphs of this section, the seller on arrival of the tank car at his mill, at his option may or may not fill them, but he must declare his intention in this regard in written notice to buyer by registered mail within twenty-four hours after the expiration of the contract time, and failure to make such declaration of purpose within the time specified acts as a revival of contract, and seller must fill the tank on arrival." The "preceding paragraphs" referred to were as follows: "In case the buyer furnishes tank cars, shipment of the entire number of tank cars contracted for shall be made by the buyer as follows: (1) Immediate shipment of empty tank cars shall be within two working days; (2) quick shipment of empty tank cars shall be within five working days; (3) prompt shipment of empty tank cars shall be within ten working days." Appellee did not plead the rule it relied upon as operating to revive the contract, and calling attention to its failure to do so perhaps is a sufficient answer to its contention. But we think it is reasonably clear that the provision in the rule quoted requiring the seller within the time and in the manner specified to give notice to the buyer that he would treat the contract as at an end, applied only in case the buyer when he had contracted to do so had not shipped tanks "immediately," "quickly" or "promptly," as specified in the "three preceding paragraphs" of the rule. The contract here was not for such shipment, and therefore the provision in the rule invoked by appellee did not apply, and the contract was not revived by the failure of appellant to give notice as the rule specified notice should be given.

As we view the case made by the evidence as it appears in the record, appellee's recovery must be measured by the damages it suffered as the result of such delay as it may show appellant to have been guilty of in shipping out the two cars shipped by it, and to such damages as it may have suffered by reason of the failure of appellant to comply with the directions as to the routing of said cars given in the order for the oil.

It is not necessary, we think, that other assignments presented by appellant should be considered.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.