# Franklin Sugar Refining Co. *v.* Howell, Appellant.

*Practice, C. P.—Affidavit of defense—Amendment—Averments of statement and affidavit of defense—Act of May 14, 1915, P. L. 483.*

1. Defendant has a legal right to file an amendment to his affidavit of defense, at any time during the pendency of a rule for judgment for want of a sufficient affidavit of defense, under the Act of May 14, 1915, P. L. 483.

2. Specific averments in an affidavit of defense must be taken as true on a rule for judgment for want of a sufficient affidavit of defense; while only those averments of the statement of claim not specifically denied by the affidavit, will be so considered.

*Contract—Sales—Statement of claim—Act of May 19, 1915, P. L. 543—Memorandum—Part performance—Custom—Trade meaning—Tender of rescission—Acceptance or refusal—Measure of damages.*

3. In a suit to recover for the breach of a contract for the sale of goods in excess of $500 in value, the statement of claim must set forth the facts showing a compliance with the requirements of the fourth section of the Sales Act of May 19, 1915, P. L. 543.

4. In the absence of part performance, every essential element of a contract, within the purview of that section, must appear in writing or must be so referred to in a paper which is signed as in effect to incorporate it therein by the internal references made.

5. Part performance of an unwritten contract for the sale of goods in excess of $500 in value, is sufficient under the statute though the full terms of the agreement are not set forth in writing.

6. Every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates.

7. Language used in a contract will be construed according to its purport in the particular business to which it relates, although this results in an entirely different conclusion from that which would have been reached if the usual meaning had been given to the words of the contract.

8. The rule requiring the trade meaning to be given to words relating to a particular business, does not result in the making of contracts, where none otherwise would exist, but only applies the trade meaning to the words actually used and particularizes nothing which the contract itself does not particularize.

9. Where a vendee refuses to take the goods purchased, the vendor may either accept the tender of rescission and sue to recover the difference between the contract and market prices at the time and

place of delivery; or may refuse to accept it, tender the goods in accordance with the contract, and recover the difference between the contract price and the net sum realized by their prompt sale in the nearest available market.

10. Where the vendor accepts the tendered rescission, and there are two or more possible measures of damages, arising under the circumstances of the particular case, that measure will be adopted which causes the least loss to defendant.

Argued March 30, 1922.   Appeal, No. 311, Jan. T., 1922, by defendant, from order of C. P. No. 4, Phila. Co., March T., 1921, No. 4751, making absolute rule for judgment for want of a sufficient affidávit of defense, in case of Franklin Sugar Refining Co. v. Samuel Howell.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SADLER, JJ.   Reversed.

Assumpsit on contract of sale.

Rule for judgment for want of sufficient affidavit of defense.

The opinion of the Supreme Court states the facts.

Rule absolute in an opinion by FINLETTER, J., 30 Pa. Dist. R. 1079.   Defendant appealed.

*Error assigned,* inter alia, was order, quoting it.

*Owen J. Roberts,* with him *Robert C. Walker,* for appellant.—The pleadings established sufficient facts to preclude a court from finding as matter of law that the minds of the parties have met: Bubb v. Oil Co., 252 Pa. 26; McMillin v. Titus, 222 Pa. 500; Fisher v. Ronemus, 267 Pa. 325; Hassam Paving Co. v. Stipp, 249 Pa. 94; Powers v. Curtis, 147 Pa. 340.

There are no memoranda containing all of the essential terms of the alleged contracts as required by section 4 of the Sales Act: Mason-Heflin Coal Co. v. Currie, 270 Pa. 221; Paper Box Co. v. McQuade Co., 164 N. Y. Sup. 201; Manufacturers L. & H. Co. v. Lamp, 269 Pa. 517; Llewellyn v. Coal Co., 242 Pa. 517; Howard & Co. v. Innes, 253 Pa. 593.

The lower court erred in discharging defendant's rule to show cause why the amended affidavit of defense should not be further amended: Mason-Hefflin Coal Co. v. Currie, 270 Pa. 221; Buehler v. Plate Co., 269 Pa. 428.

*George Wharton Pepper,* with him *Thomas Reath, Jr.,* and *Henry S. Drinker, Jr.,* for appellee.—The admitted facts show that contracts were created: Stevenson v. Sun Co., 77 Pa. Superior Ct. 587; Am. Dressler Tunnel Kilns v. Holt, 269 Pa. 293; Atchison v. Board of Publication, 266 Pa. 47; Lennox Coal Co. v. Duncan Spangler Coal Co., 265 Pa. 572.

There is a memorandum of each contract sufficient to satisfy the statute of frauds (section 4 of Sales Act of 1915): Humphrey v. Dale, 7 E. & B. 266; Title G. & S. Co. v. Lippincott, 252 Pa. 112; Buehler v. U. S. Fashion Plate Co., 269 Pa. 428.

OPINION BY MR. JUSTICE SIMPSON, May 8, 1922:

Plaintiff sued to recover the difference between the market and contract prices of certain sugar, which it alleged it had sold to defendant but he had refused to accept; the pleadings were duly filed, a rule for judgment for want of a sufficient affidavit of defense was taken and made absolute, and defendant appeals.

After the argument of the rule in the court below, but before it was decided, defendant petitioned the court for leave to amend its affidavit in certain specified particulars; the petition was dismissed and this is assigned as error. It was error: Bordentown Banking Co. v. Restein, 214 Pa. 30. True, that case was decided while the Procedure Act of May 25, 1887, P. L. 271, was in force; but the Act of May 14, 1915, P. L. 483, makes no change in this respect. Plaintiff urges, however, that if the amendment had been allowed it would not have defeated the right to judgment, and hence the error was harmless. This conclusion is accurate, if the premise is correct; but in the view we take of the case it is not necessary to decide the question.

Of course, where, as here, the averments of the affidavit of defense contradict those of the statement of claim, the former must be taken as true, and those of the latter only where they are not specifically denied. Thus viewed, we find the facts to be as follows: Plaintiff is a refiner of sugar and sold its product through certain brokers, one of whom was J. H. Huston Co., Incorporated, to whom it gave authority to enter into contracts, when advised by plaintiff it had sugar for sale; and to whom it paid commissions for effecting the sales. The broker had customers of its own, to whom it offered the sugar when so advised; defendant was one of these. If the offer was accepted, the broker executed a sales memorandum and sent a copy thereof to the buyer, another to the seller, and kept one itself. Ordinarily, in this phase of the transaction, it was acting for both parties.

With a wealth of detail, the statement of claim avers the broker was defendant's agent in signing the sales memoranda, which, it is stated, constituted completed contracts; these allegations the affidavit of defense disputes, and avers that, in so far as defendant's acts seem to give color thereto, they were induced by the affirmative fraud of the plaintiff, or of the broker, who was plaintiff's agent, or of both. The court below agreed with plaintiff on these points, but we do not intend to rule upon them, or any other of the matters elaborately argued, save such as are specifically considered in this opinion. Most of the others will probably fall by the wayside, as a result of the conclusions actually reached; for if the evidence is sufficient to establish part performance, in order to make the contracts enforceable under section 4 of the Sales Act of May 19, 1915, P. L. 543, it will also establish the agency; and if there was no part performance, for the reasons hereinafter stated, they are unenforceable, because of noncompliance with that statute.

We, therefore, turn at once to the main question in the case, which is: Were the contracts unenforceable because of section 4 of the Sales Act? which provides as follows: "A contract to sell or a sale of any goods or choses in

action of the value of $500 or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

In the present case, there is no averment of any payment by defendant, except in those instances in which it is averred on the one side and denied on the other that there was part performance; and hence our inquiry is limited to determining whether it undisputedly appears there was an adequate note or memorandum of any or all of the contracts, signed by defendant or his agent, and if not whether there was part performance of any of them. In considering these matters it is not necessary to review the other statutes having the same purpose in view as this provision of the Sales Act, though the exact language of the clause relating to the note or memorandum appears in the Act of April·26, 1855, P. L. 308, and has often been construed in the way we shall interpret it in the present case. So far as affects the present controversy, we have ample and satisfactory authority under the Sales Act for all the questions now arising.

In Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, it is said that the facts, showing plaintiff's right to recover under this provision of the act, must be averred as well as proved; and in Manufacturer's Light & Heat Co. v. Lamp, 269 Pa. 517, that every essential element of the contract must be in writing, signed by the purchaser or his agent, or must be so referred to in the paper which is signed, as in effect to incorporate it therein by the internal reference made to it. It is clear also, that every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates (McKnight v. Manufacturers Natural Gas Co., 146 Pa. 185) ; and hence the language used in a contract will be construed according to its purport in the particular busi-

ness, although this results in an entirely different conclusion from what would have been reached, had the usual meaning been ascribed to those words: Guillon v. Earnshaw, 169 Pa. 463. This is the limit of the rule, however; it does not make contracts, but only applies the trade meaning to the words actually used, and particularizes nothing which the contract itself does not particularize.

In this suit there are seven sales memoranda, exactly alike except as to the various dates mentioned and quantities purchased. Hence we use only one of them for the purpose of this opinion, and insert here an exact duplicate thereof as follows:

It will be noticed that this memorandum does not specify any price to be paid by defendant. The words "basis 22.50" and "price 22.50," as the court below accurately says, are meaningless if taken by themselves. The normal meaning of the line "50 barrels or equivalent,

price 22.50" would be fifty barrels, or their equivalent in other packages, at $22.50 per barrel. The dollar mark, however, is not used, and was not intended to be; admittedly the price was to be 22½ cents for each pound of sugar in each barrel purchased. Ordinarily, if this was intended, it would be written 22½ cents, or .225. We therefore start out with the fact that an important term of the contract cannot be ascertained from the paper alone, if its words are to be given their usual significance.

It will be observed, also, that in the memoranda there are no specific references to anything extraneous, by which the figures 22.50 can be translated into 22½ cents a pound. They clearly show, and it is admitted, there were many grades of sugar, which, when the different methods of packing them are taken into account, made forty or more varieties. This is also a necessary conclusion from the sales memoranda themselves, for they say "assortment to be furnished to seller by buyer......but subject to such substitutions as seller may find necessary to make," which must mean that some selection of grade may be made by defendant, subject, however, to plaintiff's right to substitute another grade, if necessary so to do, in order to deliver the quantity required. The same conclusion is reached from a consideration of the later clause, that "in the event assortment is not furnished promptly, seller reserves the right to ship such grades as he has available at the time of shipment." We need pursue this subject no further, however, since plaintiff admits "the memorandum necessarily implies some differential"; the unavoidable conclusion therefrom being that what it is must be shown by something extraneous, if the foregoing requirement of the Sales Act is to be satisfied.

The contract not having specified the price, and there being nothing referred to therein from which it can be ascertained, our next inquiry is whether or not, by the customs of the business, the words actually used have a trade meaning which will supply the missing term. Apparently recognizing this need, plaintiff avers in its

statement of claim that "a standard barrel in which sugar is packed is, by the custom of the sugar trade, of a size to contain approximately 350 lbs., of extra fine granulated sugar"; "unless some other grade is specifically mentioned, granulated sugar is the standard grade upon which all quotations and calculations are based"; "350 lbs. of sugar in fixed weight packages or bags is considered as the equivalent of a barrel"; and "if the assortment calls for delivery not in barrels but in fixed weight bags or packages, then, by the custom of the sugar trade, irrespective of the grade of sugar specified, the quantity in pounds to be delivered is determined by multiplying the given number of 'barrels or equivalent' by 350. If the assortment calls for delivery in barrels, then, by the custom of the sugar trade, the quantity in pounds to be delivered is that quantity of the grade specified which will be contained in the given number of standard barrels."

The affidavit of defense qualifies these averments in several particulars, among others by alleging "that a standard barrel will contain from 240 to 375 lbs. of other kinds of sugar, depending entirely upon the grade thereof"; although "the price of extra fine granulated sugar in barrels is a basis price from which the price of various other grades and packages of sugar are computed, by means of adding or subtracting a differential, it is denied that in any other respect, under the customs of the sugar trade, granulated sugar is considered the standard grade upon which all quotations and calculations are based"; and, moreover, "under the prevailing custom of the sugar trade, the buyer under such a contract may at his option furnish seller with assortments specifying that all deliveries thereunder shall be of the lightest grade of sugar packed in barrels."

If these disputes were important in the present stage of the case, we would be compelled to hold that the averments of the affidavit of defense in some respects contradicted those of the statement of claim, and hence this matter should be referred to a jury for its consideration. We are not required to decide the appeal on this point,

however, since plaintiff's averments, even if given full effect as stated, do not fix the price which defendant would have to pay for any of the grades of sugar except, perhaps, the extra fine granulated in barrels; and yet he had a right to select any one or all of the other grades. Plaintiff frankly admits there is no "custom of the trade [averred] which would make the price list a part of the contract obligation, and......even if such a custom existed it would be insufficient to bring in the price list, except as a definition of the meaning of 'basis 22.50' and 'assortment'"; 'which, of course it cannot effectively do here, since the price list is unsigned and is not by reference incorporated into the memoranda.

In a further endeavor to overcome this difficulty, plaintiff avers that a price list, giving full information upon this point, was "conspicuously displayed in plaintiff's office, in the broker's office, was published in the trade periodicals, was distributed widely to the sugar trade generally, and was well known to the trade, including defendant. Said price list, or a copy thereof, was furnished by broker to defendant prior to the making of any of the contracts here in suit." Assuming all this to be true, it does not meet the difficulty, for this particular list is not signed by plaintiff, either directly or by reference, and the custom alleged does not carry it into the sales memoranda so as to make it a part thereof.

Apparently impressed with the thought that this was the crucial point of the case, the court below asks: "Suppose A, by written contract, agreed to sell to B 100 shares of Pennsylvania Railroad stock, 'at the opening price today on the Philadelphia Exchange' or at the 'highest price to-day on the exchange,' would the contract be unenforceable? Or to sell the stock of merchandise in a certain store, 'at the book values shown in seller's books'? Or suppose A agreed in writing to pay five dollars a barrel for the production for a fixed period of a certain well, or to pay one thousand dollars for the furniture described in a certain inventory, or a million dollars for Willow Grove Park? Would any of these contracts of-

fend against the statute? Would proof of the sales on the exchange, the book values, the number of barrels produced, the details of the inventory, or the boundaries and contents of the park, be excluded?"

Assuming that these supposed contracts made clear that the "exchange" therein mentioned was the Philadelphia Stock Exchange, and not that of some other exchange, here or elsewhere, that the Willow Grove was the one located in Montgomery County, Pennsylvania, and not that in Kent County, Delaware, and the other matters referred to were equally well identified, there would be no difficulty in answering these questions as the court below desired; and this for the reason that, by reference, every necessary matter was incorporated into the supposed contracts. There would have been but one opening price and one highest price on the "exchange," on the day fixed for the sale; there would have been but one "stock of merchandise in a certain store," and the "book values shown in seller's books" are also individuated; there would have been but one "certain well" and but one total outflow therefrom; there would have been but one "certain inventory" of the furniture referred to; and there would have been but one "Willow Grove Park," with definite boundaries and acreage; thus, by applying these particular matters, which by reference are incorporated into the contracts, there would be but one result in each case, and the requirement of the statute would have been satisfied.

In the present case, however, this is not so. We may conclude, not because the contract says so but because experience shows it is usual, that somewhere, in memory or in writing, there was a schedule of the cost of the different kinds of sugar in the different receptacles; we may conclude, not because the contract says so but because it would be difficult to bear in mind all those figures, that there was *a* written or printed price list somewhere, to which one might go in order to ascertain the different prices; but we cannot conclude, because the statute says we shall not, that *the* price list attached to

the statement of claim is the one which must be applied to these contracts, especially as it says "prices are subject to change at any moment without notice." It would have been easy to clear up this difficulty by attaching a copy of the price list, or by a proper reference in the memoranda, but neither was done. Hence, as the prevention of frauds and perjuries in the enforcement of such contracts was the purpose for enacting this provision of the Sales Act, we are compelled to hold its requirements have not been complied with by these memoranda.

The legal situation upon this point is fairly summarized in 27 Corpus Juris, 277, 278, as follows: "The note or memorandum must contain the terms of the contract, together with the conditions, if any. It must show all the terms of the contract. That is, all essential terms of the contract must be made to appear in the writing. Likewise all essential conditions of the agreement must be contained in the memorandum. Where essential terms are omitted from the writing, the contract, being partly in parol, is within the statute, and there is no sufficient memorandum thereof. A writing is insufficient as a memorandum where it does not state any [all] of the terms of the contract; where it omits or states incompletely a single essential term; where it merely refers to the contract without stating its terms; or where it shows expressly or inferentially that there are terms which it either does not state or does not clearly and sufficiently state." This conclusion is in keeping with what we said in Title Guaranty & Surety Co. v. Lippincott, 252 Pa. 112, following the cases cited therein; and one of these "essential terms," required to be in the writing, is the price to be paid by the buyer (Soles v. Hickman, 20 Pa. 180; Briggs v. Morris, 244 Pa. 139, 144), whenever, as here, it is alleged to have been part of the contract.

We can only conclude, therefore, that, in so far as the sales memoranda are concerned, or any custom of the trade appertaining to them, there is not a complete "note

or memorandum" in writing of any "of the contracts ......signed by the party to be charged or his agent in that behalf."

Was there part performance of these contracts, or any of them, so as to make them enforceable? Plaintiff avers that three of them were partly performed; this defendant denies. If they have not been, then, because of the main question already considered, all are unenforceable; if three of them have been, then by the express terms of the act they may be enforced, though there was no note or memorandum in writing in regard thereto. In this latter event, the measure of damages may become important, and hence we proceed to consider it.

The court below held that under the contracts, if enforceable, recovery could be had upon the basis of 350 pounds to the barrel, and at the difference between the contract price of $22\frac{1}{2}$ cents a pound for extra fine granulated sugar, and eight cents a pound, the market price at the time of the breach. Assuming the facts set forth in the affidavit of defense are true, this conclusion cannot be adopted as a matter of law; it may or may not be correct, as a matter of fact, depending upon the jury's findings regarding two questions: (1) What number of pounds per barrel is to be taken, in view of the fact that the contents of the barrels vary in weight from 240 to 375 pounds? and (2) with the cost of what grade of sugar is defendant to be charged, in view of the fact that it varies in price, depending on the kind taken?

On the second of these questions, plaintiff alleges there is a trade custom which fixes 350 pounds to the barrel, and that this is what is meant, in the trade, by the words "barrels or equivalent," appearing in the contract. If there was such a custom (determinable, of course, by what has been often said as to the requisites necessary to make it valid), then it is binding upon defendant. If there was not, then this question, as well as the first of those above stated, must be determined by the court and jury upon the same principles.

The contracts gave to defendant the right to specify, in

the first instance, what kind of sugar he desired, and admittedly the price varied, depending upon the kind taken. It is true, if he asked for a kind which was not "available," plaintiff could send him some other grade, and if it did the price to be paid would be that scheduled for the sugar actually received; but that which was sent would have to be selected from what was "available," to conform as nearly as possible to that which was specified; and, if the time limit for selection had not expired, defendant, if he could not get the grade specified, could cancel the order and leave the contract in force.

We need not consider this question any further, however, since no order was given; in which event the contract provided that plaintiff might determine the kind of sugar to send, and defendant was obliged to accept that which was sent, and pay accordingly. None was actually tendered, however, and the question to be determined is, therefore: What measure of damages is applicable in this aspect of the matter? If plaintiff had refused to assent to the attempted rescission, and had shipped whatever kind of sugar it chose, "F. O. B. Philadelphia," and defendant had refused to receive it, plaintiff could have sold it in the nearest available market and held defendant for the difference between the contract price and the net sum realized by the sale: Barber Milling Co. v. Leichthammer Baking Co., 273 Pa. 90. This it did not do, however, but on the contrary treated the rescission as ending the contracts, and sued for the difference between the market price and contract price at the time of its acceptance of the cancellation. Under these circumstances, subject to the other questions herein considered, the rule as to the smallest possible amount of damages would apply.

Plaintiff further contends, however, that during a number of years defendant had purchased certain grades of sugar, the relative proportions of which can be stated with accuracy, as can also the weight of the contents of each barrel included in those purchases. It claims, therefore, that since defendant is still in the same busi-

ness as when the prior purchases and deliveries were made, by the course of dealings stated there was established a reasonable measure of damages by apportioning the sugar which defendant should have taken under these contracts, exactly as he selected it in the previous purchases.

That contention would be more forcible if it were, shown that plaintiff was the only refiner from whom defendant bought sugar at the time of the deliveries under the previous contracts, that he intended to continue in the same business, and that the demands of his customers were substantially the same. This, however, introduces speculative elements, difficult if not impossible of proof. At the time defendant repudiated the contracts, it was his option to say: "I will select that kind of sugar which, considering the price and number of pounds per barrel, will make my loss as small as possible." Had he done so, and that kind of sugar was "available," plaintiff would have been bound to deliver it. When he did not, as already pointed out, plaintiff had the right to refuse to accept the tendered rescission and to deliver such sugar as it had on hand; and thus, if defendant refused to receive it, plaintiff could have accurately measured its damages. When, however, it treated the rescission as ending the contracts, and sued without attempting a delivery, it introduced into the problem the speculative elements above referred to, and can only blame itself if the law adheres to the rule that the least damages possible is the measure of recovery.

In view of what has been said, it is not necessary to quote at length from the authorities bearing upon this question. It is conceded by appellee that ordinarily the difference between the market and contract prices is to be applied in measuring damages, and that if either of two methods of assessment is possible, the one producing the smaller amount is to be adopted. "The recognized rule in cases of uncertainty of this kind is not to reject altogether, but to assess the damages on the basis of the lowest sum": Jones's App., 62 Pa. 324, 328.

If a buyer is given an option to select goods of differ-

ing qualities or prices, he may exercise the privilege within the limitations fixed by the contract: Berg Co. v. Thomas & Son Co., 256 Pa. 584. "When, however, no choice has been made, either expressly by the promisor, or automatically by the terms of the contract, or by law, the measure of damages for the breach of such a contract is the value of the alternative least onerous to the defendant": 3 Williston on Contracts 2498; 1 Sedgwick on Damages, section 421; 17 Corpus Juris 847; 35 Cyc. 600. This controlling principle has been thus stated in the leading case of Holliday & Co. v. Highland Iron & Steel Co., 43 Ind. App. 342: "Where a contract is entered into between parties, giving to one of them an alternative, and the party having the right to such alternative breaches the contract, in estimating the measure of damages for a breach of such a contract, the alternative must be accepted which will be least injurious to the party having a right to exercise the choice." The same rule is recognized in Kimball Bros. v. Deere, Wells & Co., 108 Ia. 676; Delker Co. v. Hess Spring & Axle Co., 138 Fed. 647; and by leading text writers.

As already pointed out, the present agreement fixed a price based on barrels of granulated sugar, ordinarily containing 350 pounds, but an option was given to the buyer to designate other kinds, varying in price as well as in the quantity in the container. By the affidavit of defense, defendant could have selected barrels the contents of which weighed as low as 240 pounds; hence, in the absence of some undisputed averment in the statement that the purchase was of granulated sugar alone, or that no other grade was available for delivery at the time of the breach, defendant could not be charged, in entering judgment for want of a sufficient affidavit of defense, on any other basis than the one least burdensome to him.

In order to avoid misapprehension, it should be stated that the controlling questions above set forth, were not raised and, therefore, were not considered or decided, in Franklin Sugar Refining Co. v. Hanscom Bros., 273 Pa.

98, for the obvious reason that the two contracts referred to in that case, had been partially performed.

The judgment of the court below is reversed and a procedendo is awarded.