## FRANKLIN SUGAR REFINING CO. v. EGERTON et al.

(Circuit Court of Appeals, Fourth Circuit. April 7, 1923.)

No. 2015.

1. **Frauds, statute of ⊙══118(4)—Recognition of contract expressed in one or several writings sufficient.**

A written recognition of a contract of sale, expressed either in one writing or in several taken together, even with a request in one writing for release, refusal to perform the contract, or the denial of its validity, is sufficient under the statute, now expressed in the Uniform Sales Act adopted in the states of Maryland and Pennslyvania (Bagby's Ann. Code Md. art. 83, § 25).

2. **Frauds, statute of ⊙══106(1)—Memoranda of sale held not indefinite or uncertain.**

A memoranda of sale of sugar "basis 22.50" was not indefinite and uncertain as to the quality and price of the sugar purchased, the evidence showing that the language was understood by the trade and definitely fixed the price and quality.

3. **Evidence ⊙══457—Terms used in trade may be explained by parol to make contract definite.**

The meaning of a term used in a trade may always be explained by parol evidence, to make a contract of sale definite and certain.

4. **Evidence ⊙══445(2)—Agreement contrary to writing cannot be shown by parol.**

Where a contract of sale contained the words, "This purchase will be invoiced and paid for at contract price; no allowance will be made for declines in market," court erred in permitting parol testimony to the effect that seller's agent agreed on seller's behalf to protect buyers against decline in the market, notwithstanding the rule that a written contract may be rescinded or changed by parol agreement for a consideration; there being no evidence of consideration, or that seller's agent had authority to make such a change.

5. **Sales ⊙══81(3)—Due diligence required, under provision for delivery as soon as possible.**

Under a memorandum of sale of sugar, delivery to be made in July, "or as soon thereafter as is possible," *held*, that seller could make the de-

livery after July, if it used all due diligence to deliver as soon as possible.

6. Sales ☞384(1)—Measure of damages, on election of seller to treat contract as rescinded and sue for breach, stated.

Where seller of sugar, instead of exercising its right under contract to tender such grades as it had available, and on refusal of tender selling the sugar at the risk of purchaser, elected to treat the contract as rescinded and sue for its breach, the measure of damages least onerous to purchaser should be adopted.

7. Sales ☞384(2)—Measure of damages for breach of contract to receive goods.

On breach by purchasers of contract for sale of sugar to be delivered at different times, seller was entitled to recover the difference between the contract price and the market price of the undelivered sugar.

On Cross-Writs of Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the Franklin Sugar Refining Company against Stuart Egerton and Samuel E. Egerton, Jr., copartners trading as Egerton Bros. From the judgment, cross-writs of error are prosecuted. Reversed.

John S. Short and James Piper, both of Baltimore, Md. (Piper, Carey & Hall and Joseph C. France, all of Baltimore, Md., on the brief), for plaintiff in error and cross-defendant in error.

W. Calvin Chesnut and Vernon Cook, both of Baltimore, Md., for defendants in error, and cross-plaintiffs in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The Franklin Sugar Refining Company seeks to recover damages for breach of alleged contracts for the purchase of sugar embraced in this table:

| No. of Contract. | Date Made, 1920. | Barrels. | For Delivery in Month of |
|---|---|---|---|
| 4239 (1/2) | June 23 | 115 | July |
| 156 | May 27 | 500 | July |
| 4340 | June 29 | 244 | August |
| 162 | May 27 | 500 | August |
| 2142 | June 5 | 280 | September |
| 4868 | July 7 | 150 | September |
| 5437 | July 13 | 300 | September |
| 5857 | July 20 | 300 | October |

The District Judge in his instructions distinguished the alleged sales as presenting several different questions of law and fact. There were numerous requests to charge, only one of which was granted. The verdict was in favor of plaintiff for $27,313.68. The case is here on cross-writs of error. We consider the questions involved without detailed reference to the exceptions and assignments of error.

The Franklin Sugar Refining Company, plaintiff, was engaged in refining sugar and selling it wholesale in Philadelphia. In the autumn of 1919 and spring of 1920 sugar was very scarce, and in urgent demand at high prices. The plaintiff sold in Baltimore, through F. S.

Beacham, its agent, subject to confirmation at its Philadelphia office. Sales were evidenced ·by memoranda. The following is a specimen memorandum of sale:

When the customer agreed to take. a certain quantity of sugar at a certain price and delivery, Beacham made out three 'copies of the memorandum, marked "Original," "Confirmation," and "Broker's Copy." The last he retained and sent the others to the Franklin Sugar Refining Company at its Philadelphia office. If accepted by Franklin Company, it placed the contract number on the lower right-hand corner of the original and confirmation, and returned the latter to Beacham, to be given to the customer as evidence of the sale. ·All of the alleged sales here involved, Beacham testified, were made in this way, and the confirmation copies were produced by the defendants at the trial.

The defendants set up these defenses: (1) They did not sign the memoranda, or any other notes of· sale, and therefore the agreements· for sale of sugar, even if made, are invalid under the statute of frauds. (2) The plaintiff orally guaranteed the price at time of delivery should· be the market price at that time. (3) Defendants did not agree even orally to the alleged contracts for September and October deliveries.

The statute .of frauds, now expressed in the Uniform Sales Act,. adopted in the states of Maryland and Pennsylvania, is as follows:

"(1) A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract of sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section shall apply to every such contract of sale, notwithstanding that the goods may be intended to be delivered at some future time," etc.

Bagby's Ann. Code of Maryland, art. 83, § 25.

Since the memoranda of sale were not signed by the defendants, the first position would be conclusive in their favor, but for the subsequent correspondence. Defendants introduced copy of this letter from Egerton Bros. to W. W. Frazier, Jr., president of the Franklin Sugar Refining Company, dated August 6, 1920:

· "On my recent return home from my vacation, my brother tells me that Francis had advised him that the Franklin had allotted us certain sugars for fall shipment. My brother advised Francis that he had nothing to do with the sugar end of our business, and he had better take the matter up with me. Now, in view of the very unsatisfactory way in which our June and July allotments were delivered, or not delivered at all, and in view of the uncertainty of Francis Beauchamps' promises or guaranty that we would lose no money on any of these allotments, we write to say that we do not want these allotments, unless they are to be billed at Franklin's ruling price day of shipment."

In his testimony Frazier denied receiving such a letter; but the letter, even if received by plaintiff does not affect the question of the validity of the contracts of sale. On August 9 defendants by letter asked plaintiff—

"to kindly not ship any more sugar to us without first submitting the matter to us as we are now overstocked with sugar."

Then follow the two controlling letters. In response to defendants' letter of August 9, plaintiff wrote on August 10 that it was instructing the delivery department, "if convenient, to withhold delivery of the following until we hear from you." Plaintiff then gives in this letter a detailed statement covering all the contracts sued on—the lot number, the number of barrels, the time of delivery. The letter closes:

"In this connection we ask that you consider our problems, such as storage space and erratic car supply (we could not fail to take advantage of any cars that we might secure), which cause us to reserve the privilege of making shipments earlier, if found necessary."

Defendants sent this reply, August 14:

"We have your favor of August 10th, replying to ours requesting you to hold up the delivery of undelivered allotments. We note that you reserve the privilege of making shipments at your convenience, irrespective of our request. In this connection we beg to call your attention to the fact that shipments were made on our earlier contracts Nos. 1462, 1879, 1880, 3214, and 14272, entirely of F. granulated in bags and 4 25's, although our confirmations were for assorted cars as ordered by us. All of which was the occasion of considerable inconvenience to ourselves, but which we accepted. The memo of the unshipped contracts which you inclose approximate some 2,400 barrels to be shipped in July, August, September, and October, 'or as soon as possible thereafter.' Neither the July nor the August deliveries have yet been made. Since we have been deprived of the opportunity of taking advantage of the recent

conditions in sugar and selling the sugar at a profit, we are now confronted by the certainty of a very considerable loss on these, and probably on the sugars for later deliveries. Since granulated sugar could to-day be produced and sold at the usual margin at about 16 cents, it is not impossible that in a very few days it will be obtainable at this price, and our stock will have to be sold in competition with those buying at this low price. In view of the present condition of the market, with raw sugars selling at 12 cents, we want to ask if it would not be possible for you to either cancel the remaining unshipped portion of out allotments or make a material reduction in the price of 22½ cents at which they were entered."

[1] This letter of defendant, read in connection with the letter it answered, is a full recognition and acknowledgment of all the alleged contracts of sale, the number of barrels bought, the basis price of 22½ cents, and the time of delivery, and it meets the demands of the statute as fully as if the original memoranda of sale, including those of September and October, had been signed by the defendants. A written recognition of the contract, expressed either in one writing or in several taken together, even with the request for release, refusal to perform the contract or the denial of its validity, is sufficient under the statute. Barry v. Coombe, 1 Pet. 640, 7 L. Ed. 295; Ryan v. United States, 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; Drury v. Young, 58 Md. 546, 42 Am. Rep. 343; Louisville Co. v. Lorick, 29 S. C. 533, 8 S. E. 8, 2 L. R. A. 212; Colleton Realty Co. v. Folk, 85 S. C. 84, 67 S. E. 156; George Lawley & Son v. Buff, 230 Mass. 21, 119 N. E. 186; 27 Corpus Juris, 257; 25 Ruling Case Law, 643.

[2] The defendants next contend that even if plaintiff's letter of August 10 and their own reply of August 14 be equivalent to the signing by them of the original memoranda of sale, still they are not bound because of the indefiniteness and uncertainty of the memoranda as to the quality and price of the sugar purchased. For this position they rely chiefly on Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 118 Atl. 109, holding that a memorandum like that involved here was too indefinite to constitute the basis of a valid contract. That case was decided on the pleadings, the court holding that no definite contract of sale was alleged. We are deciding a case in which the evidence shows that the language of the memoranda as understood by the trade fixed definitely the price and quality. On this point Frazier, president of the plaintiff corporation, testified:

"Contracts were always made upon the basis of fine granulated, and the prices of other grades or package were determined by the addition to or subtraction from the basis price of certain differentials. For instance, soft sugar was cheaper than fine granulated and the differential therefor would be deducted from the 22½-cent basis price. Fine granulated sugar in cartons would be higher than fine granulated in barrels, and the differential in this case would be added. The differentials are fixed and known to the trade. They were advanced during the war, owing to increased cost of packages; but the change was made some time before the date of this controversy."

[3] Not only was there no contradiction of this evidence, but the whole record shows that defendants had long bought sugar on this plan, and that they fully understood "basis 22.50" to be a trade term having the meaning attributed to it by Frazier. The meaning of such a term may always be explained by parol evidence, to make the contract definite and certain. Frederick v. American Sugar Refining Co.

(C. C. A. 4th Cir.) 281 Fed. 305; Markey v. Brunson (C. C. A. 4th Cir.) 286 Fed. 893; Namquit Worsted Co. v. Whitman, 221 Fed. 49, 136 C. C. A. 575; "Cash basis" in sale of cotton, Morris v. Supplee, 208 Pa. 253, 57 Atl. 566; "basis" in cotton contract, Daniel v. Maddox-Rucker Banking Co., 124 Ga. 1063, 53 S. E. 573; "tank basis" in oil contract, Paris Oil & Cotton Co. v. Carstens Packing Co., 60 Tex. Civ. App. 68, 126 S. W. 1182.

[4] The memoranda which expressed the contracts afterwards evidenced by the letter of defendants contained the words:

"This purchase will be invoiced and paid for at contract price; no allowance will be made for declines in market."

The District Judge erred in admitting parol testimony to the effect that Beacham, plaintiff's agent, agreed on plaintiff's behalf to protect defendants against decline in the market. But the instruction was correctly given that the provisions in the written contract that no allowance would be made for the decline in the market could not be affected by the parol evidence to the contrary. It is true that a written contract may be rescinded or changed by parol agreement for a consideration, but there is no evidence of consideration, or that Beacham had authority to make such a change.

The September and October contracts were specifically mentioned in the letter of plaintiff of August 10, and they were embraced in the 2,400 barrels referred to in defendants' reply of August 14. The contract thus being specifically fixed and made legally vital by this writing, it could not be destroyed or altered by parol testimony. It follows that the jury should have been instructed that the defendants did contract for the September and October as well as for the August deliveries, and were liable for breach of these contracts in refusing to take and pay for the sugar.

[5] The liability of the defendants under the contracts for July was properly submitted to the jury. These deliveries were to be made in July, "or as soon as possible thereafter." The deliveries had not been made on August 10, when defendants requested a cessation of deliveries. There was conflicting evidence as to whether the plaintiff was prevented from making the deliveries before that date by its inability to procure prompt carriage by rail or water from Philadelphia to Baltimore. The jury was correctly instructed that the defendants would be liable for breach of the contract for July, if plaintiff used all due diligence to deliver the sugar as soon as possible; if not, defendants would not be liable. Pressed Steel Car Co. v. Eastern R. Co., 121 Fed. 609, 57 C. C. A. 635; 13 Corpus Juris, 583, and citations.

We are unable to agree with the District Judge's view of the measure of damages. At the time of the breach of the contracts for July and August, defendants had not selected the kind of sugar to be shipped. The weight of barrels of sugar ranged from 270 to 350 pounds, according to the kind. The contracts provide:

"Assortment to be furnished to seller by buyer before ——, 1922, subject to such substitutions as seller may find necessary to make. In the event that assortment is not furnished promptly, seller reserves right to ship such grades as he has available at the time of shipment."

[6] About 86 per cent. of the sugar produced by the plaintiff and almost all the sugar dealt in by the defendants was granulated, which was sold in barrels of 350 pounds weight. Primarily the defendants had the right to select the kind of sugar and incidentally the weight of the barrels. They did not make the selection; but neither did the plaintiff exercise its right to ship such grades as it had available, on failure of defendants to indicate assortment desired. Nor was there proof that plaintiff did not have available sufficient barrels of sugar of 270 pounds weight. It may be true that ordinarily, if one party has the option and refuses to exercise it; and thus breaches the contract, the choice goes to the other side. McNitt v. Clark, 7 Johns. (N. Y.) 465; Marlor v. Texas & P. R. Co. (C. C.) 21 Fed. 385; Wetzel & T. Ry. v. Tennis Bros. Co., 145 Fed. 458, 465, 75 C. C. A. 266, 7 Ann. Cas. 426. But the plaintiff, instead of exercising its right to tender such grades as it had available in performance of the contracts, and on refusal of tender selling the sugar at the risk of defendants, elected to treat the contracts as rescinded and sue for their breach. In such case, the measure of damages least onerous to defendants is adopted. So it was held in Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 118 Atl. 109, 114; Holliday v. Highland I. & S. Co., 43 Ind. App. 342, 87 N. E. 249; Williston on Contracts, p. 2498; 17 Corpus Juris, 847.

[7] As to the undelivered sugar, the jury should have been instructed that the plaintiff was entitled to recover for the difference between the contract price and the market price of the specified number of barrels of 270 pounds in weight and corresponding quality.

Reversed.