## FRANKLIN SUGAR REFINING CO. v. WILLIAM D. MULLEN CO.

(Circuit Court of Appeals, Third Circuit. May 13, 1926.)

No. 3392.

1. **Evidence ☞457—Frauds, statute of ☞ 158(3)—Technical trade terms used in contract may properly be translated into words of general understanding, without violating parol evidence rule or statute of frauds.**

Technical trade terms familiar to and used by the parties in a contract, may properly be translated into words of general understanding, and reading into the contract their true meaning is not a violation of the parol evidence rule or the statute of frauds, when the pleadings contain necessary averments as to the meaning of such terms.

2. **Frauds, statute of ☞106(1)—Contract for sale of sugar held to constitute sufficient "note or memorandum" within statute (Uniform Sales Act Pa. 1915, § 4 [P. L. 543; Pa. St. 1920, § 19652]).**

A contract for sale of sugar giving their true meaning to technical trade terms used and understood by the parties, held to constitute a sufficient "note or memorandum" of the sale, within Uniform Sales Act Pa. May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652).

3. **Frauds, statute of ☞116(1,2)—Letters by buyer explicitly recognizing contract for purchase of sugar, signed by its agent, held sufficient signature under statute of frauds (Uniform Sales Act Pa. 1915, § 4 [P. L. 543; Pa. St. 1920, § 19652]).**

Letters written by buyer to its agent, which signed contract for purchase of sugar in its behalf, and also to seller, explicitly recognizing the contract, giving its number and requesting its modification, held sufficient to bind it, under Uniform Sales Act Pa. May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652).

In Error to the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Action by the Franklin Sugar Refining Company against the William D. Mullen Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

For opinion below, see 7 F.(2d) 470.

Hull, Abbott & Carpenter, of New York City, and William S. Hilles, of Wilmington, Del., for plaintiff in error.

Robert H. Richards and James I. Boyce, both of Wilmington, Del., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case involves the effect and application, in a suit brought in the United States District Court of Delaware, on an alleged contract made and to be performed in Pennsylvania, of that part of the Uniform Sales Act of Pennsylvania which provides: "A contract the inquiry, whether the contracts in suit, for there are eight of them, comply with the statute requirements. We therefore take the first, being order No. 5035, which is here reproduced and consider it alone, for, if the court was in error in sustaining the demurrer to it, the cause must be reversed.

---

FORM 218 A 50 M                                                                 ORIGINAL
                                                                                 158
                              Acceptance of Order

## The Franklin Sugar Refining Company  Philadelphia, Pa.

Buyers No._____    Contract __xxx___,    Date __7/7/20_____
                                                 G-08662
Terms: Cash, Less 2% 7 Days                      Sold to____Wm. D. Mullen Co.,_

Ship to_____          Address_____Wilmington, Del._

Address_____          Basis      22.50    Freight _fob._
                                                       (F.O.B. Philadelphia)
                                                           Delivering
                                                           Carrier____
        (Option of Routing is Reserved by Seller)                     (Sellers Ruling Freight Basis on Day of Shipment)

DELIVERY COMPLETE ON RECEIPT OF GOODS BY CARRIER. THIS PURCHASE TO BE INVOICED AND PAID FOR AT CONTRACT PRICE. NO ALLOWANCES WILL BE MADE FOR DECLINES IN MARKET. THIS CONTRACT CONTINGENT ON STRIKES, ACCIDENTS, FIRE OR OTHER DELAYS BEYOND SELLER'S CONTROL. ALL ADDITIONAL IMPORT DUTIES, EXCISE OR OTHER TAXES, HEREAFTER LEVIED ON THE RAW OR REFINED SUGAR NECESSARY TO FILL THIS CONTRACT AT BUYER'S EXPENSE IN ADDITION TO PRICE SPECIFIED.
United States Food Administration License Number F 0941

| CONTAIN-ERS | CASES | SACKS | BAGS | HALF BBLS. | BBLS. | KIND PKGS. | GRADE | WEIGHT | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 100 | | BARRELS OR EQUIVALENT | | 22.50 | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Assortment to be furnished to seller by buyer before Sept 1920, but subject to such substitutions as seller may find necessary to make. In the event assortment is not furnished promptly, seller reserves the right to ship such grades as he has available at time of shipment. Delivery to be during Sept or as soon thereafter as is possible, and buyer will accept delivery when made by seller. Seller is to have option of making delivery from any of its refineries. All transportation charges to be for the account of buyer.

Subject to rules and regulations of any Government Department at the time of shipment exdxixey and delivery.

TOTAL BARRELS_____ 100        SOLD BY__J. H. HUSTON CO., Inc.
                                         U.S.F.A. LICENSE G00662.

When referring to this order please mention our order number        ORDER NO.
                                                                     5035

---

to sell or a sale of any goods * * * of the value of five hundred dollars or upwards shall not be enforceable by action * * * unless some note or memorandum in writing of the * * * sale be signed by the party to be charged." Act May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652). In that court a demurrer to the statement of claim was sustained. From the judgment thereafter entered against the plaintiff this writ of error was taken.

For present purposes we assume, but do not decide, that the statute in question makes absolutely void any contract not complying with its provisions, and confine ourselves to

[1] The inquiry, therefore, before us is: First, is this paper a sufficient "note or memorandum in writing of the sale which complies with the statute"? and, second, is it "signed by the party to be charged"? Taken at its face, the paper is not self-explanatory. It nowhere mentioned what commodity is sold, other than the statement which provides that additional duties be levied "on the raw or refined sugar necessary to fill this contract at buyer's expense in addition to price specified." Under the head of "Barrels," it provides for 100 barrels; under the head of "Grade," it provides for "barrels or equivalent"; under the head of "price",

it has the figures "22.50"; under the head of "Basis," it gives the figures "22.50." It also provides for assortments and selection or grades in the following words: "Assortment to be furnished to seller by buyer before September, 1920, but subject to such substitutions as seller may find necessary to make. In the event assortment is not furnished promptly, seller reserves the right to ship such grades as he has available at times of shipment. Delivery to be during September or as soon thereafter as is possible, and buyer will accept delivery when made by seller."

As between the parties themselves, it is quite evident that something was sold; that it was to be shipped by the seller; that the terms of payment were provided for; that assortment, whatever that means, was to be furnished to seller by buyer, but that this assortment was subject to such substitutions in grades as the seller may find necessary to make; that, in case assortments were not furnished the seller by the buyer, the seller was to ship such grades as he had available at the time of shipment. But, while these are all indicia and earmarks of a concluded transaction, including the terms of payment "Cash less 2 per cent, 7 days," the paper is not self-explanatory.

A similar contract was before the District Court for the Western District of Pennsylvania in the case of American Sugar Refining Co. v. Colvin Atwell & Co., 286 F. 686, where the court aptly described the present situation as follows: "The defendant contends that the writings do not on their face state the respective prices for the various grades and packages of sugar, which the defendant had a right to specify under the contract. This apparent insufficiency arises because of the use of certain technical terms, not of obvious meaning in themselves, but familiar and well known in the sugar trade. * * * Reading into a contract the true meaning of technical terms, familiar to and used by the parties to a contract, is in no sense supplying by parol a missing term of the agreement. Such trade usage or meaning is supposed to have been in the minds of the parties when the contract was made, and hence the real meaning of the words becomes a part of the contract. * * * Neither the parol evidence rule nor the statute of frauds is violated by reading into a contract a translation of technical terms used into words of general understanding"—and quoted in support of that view from Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 118 A. 109, the prin-

ciple that "every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates (McKnight v. Manufacturers' Natural Gas Co., 146 Pa. 185 [23 A. 164, 28 Am. St. Rep. 790]), and hence the language used in a contract will be construed according to its purport in the particular business, although this results in an entirely different conclusion from what would have been reached, had the usual meaning been ascribed to those words. Guillon v. Earnshaw, 169 Pa. 463 [32 A. 545]."

[2] In the present case, we are not writing into the contract something that is not in it, but we are finding the meaning of the terms used in the contract, which presumably were placed there by the parties because they meant something, and to each of which we are bound to give force and effect under the familiar rules of construction. These technical terms are: "Basis 22.50;" "Grade —Barrels or equivalent;" "Price—22.50;" "Assortment to be furnished—Such grades as he has available." What was in the minds of the parties when they used them, and therefore by their use meant that such meaning should be given to these technical words?

Answering the call of the paper for an explanation of the technical terms used therein, we find it in the declaration which the defendant's demurrer admits to be true, namely:

"That the word 'assortment' appearing in the said memorandum, according to the universal custom and usage of the sugar trade, meant and was understood by plaintiff and defendant to mean the specification of grades of sugar and kind of package in which delivery was to be made, said assortment to be selected from the various grades and packages then manufactured or sold by the plaintiff. * * *" That the words "Basis 22.50," according to the universal custom and usage of the sugar trade, had, and were understood by plaintiff and defendant to have, a particular trade meaning, which meaning was and is as follows: "The price of fine granulated sugar, packed in bulk, in barrels, or in 100-pound bags, is 22.50 cents per pound, and the price of any other grade or package is determined by adding to or subtracting from said price the amount of the then existing standard trade differential applicable to such other grade or package. * * * And the said plaintiff further saith that at the time of the making of the said contract, and for a long time prior thereto, there were in the sugar trade certain fixed and determined standard trade differentials,

which were known to and recognized and applied by all refiners, brokers, and dealers in all transactions involving sales, purchases, or quotations at a basis price, and that the various grades of sugar manufactured or sold by plaintiff, and the kind of packages used at the time of the making of the said contract, together with the respective standard trade differentials, in cents per pound, applicable to each such grade or package were as follows: [Here follows a list of some 44 items of different grades and packages of powdered, granulated, lump and brown sugars, with "plus" or "minus" differential figures from the basic price.] * * * That both the said plaintiff and the said defendant well knew, before and at the time of the making of the said contract, the trade usages and customs aforesaid, and that in making the said contract, and the said sales memorandum, the words 'Basis 22.50' were used with the intention by both the said plaintiff and the said defendant that they should have and convey the meaning heretofore set out, and that the price of any grade or package of sugar selected by defendant or delivered by plaintiff under said contract should be 22.50 cents per pound, plus or minus the amount heretofore set forth as the standard trade differential applicable to such grade or package."

It will thus be seen that, in making their contract, when explained by these conceded customs and usages of the sugar trade, nothing was left undetermined by its terms. The parties first fixed the basis sugar price of fine granulated sugar in barrels at 22.50 cents per pound. This basis was unchanged during these contracts, and though, as we shall hereafter see, the defendant tried to change that price to the one prevailing when the sugar was shipped, the plaintiff refused and stood on the contract. This basis price, being fixed, left no room for uncertainty as to the price for any one of the grades or packages specified in the differential list. It is therefore perfectly clear that the contract, as entered into and understood by the parties and reduced to their own trade terms, fixed absolutely the price of the commodity sold, no matter whether it passed in the basis form of fine granulated sugar or in any one of the 44 grades and packages agreed upon differentially. It is therefore clear that the contract of sale complied with the requirements of the Pennsylvania statute.

[3] The next question remains: Was it "signed by the party to be charged or his agents in that behalf"? That question is answered, first, by the admissions made by the defendant in its demurrer; and, second, by its own actions evidenced by writing over its own signature.

Referring to the admissions of the demurrer, the facts are that "the said defendant bargained for and bought of the said plaintiff, and the said plaintiff at the special instance and request of the said defendant then and there sold to the said defendant, the said contract of sale being evidenced by a note or memorandum in writing thereof, signed by J. H. Huston Co., Inc., the agent of the said defendant, the said J. H. Huston Co., Inc., being then and there a general merchandise broker, and having prior thereto been requested and instructed by the said defendant to enter into the said contract on its behalf, and the said authority being then and there in full force and effect, and being unrevoked, and the said defendant as aforesaid, bargained for and bought as aforesaid of the said defendant a large quantity of goods, to wit, 100 barrels or equivalent (350 pounds per barrel) of sugar at the basis rate or price of 22.50 cents per pound, in accordance with the terms and provisions of a certain memorandum, signed by the said defendant, through its agent in that behalf."

It follows, therefore, that the contract of sale was signed by the defendant's "agent in that behalf." But the matter does not rest here. The duplicate of this memorandum, "acceptance of order," as it terms itself, was delivered to William D. Mullen Company, and on July 10th it, by letter of J. H. Huston Company, Inc., over its own signature, stated: "We confirm purchase July 7th order No. 5035, 100 bbls. granulated sugar from Franklin to be delivered before September 1, 1920." On July 23, 1920, the William D. Mullen Company again wrote J. H. Huston Company saying: "Our records show orders * * * No. 5035. * * * Please see if this checks up with your record and notify us." On August 19, 1920, the William D. Mullen Company, referring, inter alia, to order No. 5035, over its own signature, wrote direct to the Franklin Sugar Refining Company, stating: "We would thank you, until further notice, to discontinue making shipments of sugars allotted to us for * * * September, + * * and when shipments are resumed we shall expect the sugars to be billed at price ruling day of shipment." This request for a change of price from the basic one of 22.50 cents per pound, embodied in the contract, to the "price ruling day of shipment," plaintiff refused, saying: "It will not be possible for us to make any revision in the price."

Thereafter the defendant did not furnish any allotment orders, nor accept the basis sugar covered by the contract when delivery was tendered by plaintiff.

We are clearly of opinion that these papers, signed by the defendant, recognizing the existence of the contract, and requesting changes of it, were a compliance with the statute that "some note or memorandum in writing of the contract or sale be signed by the party to be charged." We therefore hold, which holding is in accord with our holding in Howell v. Witman-Schwartz Corporation, 7 F.(2d) 513, the court below erred in sustaining the demurrer, and its order must be reversed, and the cause remanded for further procedure in accordance with this opinion.