## Franklin Sugar Refining Co. v. David Spruks Co.

*Assumpsit—Pleading—Sufficiency of statement of claim under Sales Act of May 19, 1915—Use of technical phrases—Proof of latter by parol.*

1. In an action of *assumpsit* upon a contract for the sale of sugar, a statement of claim is sufficient which sets forth a memorandum of sales signed by a broker, acting as agent for both seller and buyer, and contains all of the terms of a contract of sale, notwithstanding the fact that the terms used in the memorandum are abbreviated technical trade terms, unintelligible to persons not engaged in the trade, but familiar to, and well understood throughout, the trade and by the parties to the contract.

2. Section 4 of the Sales Act of May 19, 1915, P. L. 543, is complied with where the memorandum for the sale of sugar states the terms of sale as "basis 22.50," and where such term has a peculiar trade meaning universally known in the sugar trade, and known to the parties to the contract, such trade meaning being as follows: "The price of fine granulated sugar packed in bulk in barrels or 100-lb. bags is 22.50 cents per pound, and the price of any other grade or package is determined by adding to or subtracting from said price the amount of the now existing standard trade differential applicable to such other grade or package."

3. The meaning of technical trade terms used in a written memorandum of sales may be proved by parol, for the reason that such meaning enters into the contractual obligation through the trade usage and the practice of the parties, and is impliedly and inherently a part of the contractual obligation without being defined and expressed at length therein.

Statutory demurrer. C. P. Lackawanna Co., Nov. T., 1921, No. 829.

*Thomas Reath, Jr.* (of Philadelphia), *H. S. Drinker, Jr.* (of Philadelphia), and *Reese H. Harris* (of *Knapp, O'Malley, Hill & Harris*), for plaintiff.

*Cornelius Comegys,* for defendant.

MAXEY, J., Dec. 7, 1922.—This is a suit in *assumpsit*, in which the plaintiff claims to recover from the defendant the sum of $21,116.37, with interest thereon, upon a cause of action founded upon an alleged contract for the sale of goods, to wit, a large quantity of sugar. The statement sets forth, *inter alia*:

(Par. 3.) That John Quackenbush & Son (thereinafter referred to as "broker") was, on the dates thereinafter mentioned, a merchandise broker, with offices in Scranton, Pennsylvania.

(Pars. 4 and 5.) That said broker was duly authorized by plaintiff and defendant, to the knowledge of each other, to make on behalf of each the contracts thereinafter referred to. Said statement referred to seven specific contracts for the purchase from the plaintiff by the defendant of a total of 345 barrels of sugar.

(Par. 6.) That, pursuant to said authority, the broker, on or about the dates set forth in the statement, made and effected the contracts set forth in the statement.

(Par. 7.) That, pursuant to said authority, said broker, on or about the dates set forth, made and executed on behalf of plaintiff and defendant certain sales memoranda evidencing the terms of said contracts. Copies of said sales memoranda are attached to the statement, marked Exhibits 1-7.

(Par. 8.) That said broker delivered to plaintiff and defendant copies of each of said sales memoranda.

(Par. 9.) That plaintiff and defendant each respectively approved and ratified the action of the broker in effecting said contracts.

(Par. 10.) In the sales memoranda attached to plaintiff's statement appears the word "assortment." Plaintiff's statement sets forth that by the word "assortment" "was meant the specification of grades of sugar and kind of

package in which delivery was to be made, said assortment to be selected from the various grades and packages then manufactured or sold by plaintiff."

(Par. 11.) "In the sugar trade the words 'Basis 22.50,' whenever used in any transaction between refiners of cane sugar and their customers, have and had at all times a particular technical trade meaning, different from the usual meaning ascribed to these words, which particular meaning, in accordance with said trade usage, was and is as follows: 'The price of fine granulated sugar packed in bulk in barrels or 100-lb. bags is 22.50 cents per pound, and the price of any other grade or package is determined by adding to or subtracting from said price the amount of the now existing standard trade differential applicable to such other grade or package.'

(Par. 12.) "At the time of the making of the contracts here in suit, and for a long time prior thereto, there were in the sugar trade certain fixed and determined standard trade differentials, which were known to and recognized and applied by all refiners, brokers and dealers in refined cane sugar in all transactions involving sales, purchases or quotations of refined cane sugar at a basis price.

(Par. 13.) "The various grades of sugar manufactured or sold by plaintiff and the kind of packages used at the time of the making of the contracts here in suit, together with the respective standard trade differentials (in cents per pound) applicable to each such grade or package were as follows:" (Plaintiff's statement then sets forth the said various grades of sugar and kind of packages used, together with the respective standard trade differentials.)

(Par. 15.) "In numerous prior dealings between the plaintiff and defendant in the sale and purchase of sugar, plaintiff, defendant and broker had specified the price of the sugar sold as 'Basis ——' (inserting appropriate figure), using said words with the meaning set out in paragraph 11 hereof; and in performing contracts entered into between them containing said words, both plaintiff and defendant had so interpreted said words by delivering, billing, accepting and paying for the grades and packages of sugar at the respective prices fixed by the application of the established standard trade differentials to the named basis price.

(Par. 16.) "In making out and executing the sales memoranda evidencing the contracts here in suit, broker used the words 'Basis 22.50' with the intention that they should have and convey the meaning set out in paragraph 11 hereof, and that said words should thus determine and specify the price of any grade or package of sugar available for specification by defendant. Both plaintiff and defendant so understood said words."

### Defendant's answer.

The defendant filed an answer raising question of law as follows:

(Par. 1.) "The said statement of claim sets forth no cause of action.

(Par. 2.) "The alleged contracts, as set forth in said statement of claim, are unenforceable under clause 4 of the Sales Act of May 19, 1915.

(Par. 3.) "The said alleged contracts show neither the price of the goods nor their kind or quality.

(Par. 4.) "In other respects, the said statement of claim is in form and substance wholly insufficient."

### The Sales Act of 1915.

Section 4 (which the defendant refers to as clause 4) of the Sales Act of May 19, 1915, P. L. 543, reads as follows:

"First. A contract to sell or a sale of any goods or choses in action of the value of $500 or upwards shall not be enforceable by action unless the buyer

3 D. & C.

shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The part of said paragraph with which we are most concerned in the case at bar is the part which reads as follows: ". . . or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." Inasmuch as plaintiff's statement avers that the broker, John Quackenbush & Son, "was duly authorized by defendant, to the knowledge of plaintiff, to make on behalf of defendant the contracts hereinafter referred to," and inasmuch as the demurrer admits the facts pleaded, it follows, for the purpose of this proceeding, that the contract on which the plaintiff bases its claim was signed by the agent of "the party to be charged."

### Defendant's proposition.

The proposition on which apparently the defendant chiefly relies is that the seven sales memoranda evidencing the terms of the alleged contracts between plaintiff and defendant, copies of which are attached to plaintiff's statement, and which form the basis of plaintiff's claim, do not constitute a "note or memorandum in writing of the contract or sale." Defendant's position is that the memoranda are insufficient, because they do not on their face state the respective prices chargeable for the various grades and packages of sugar which, under the contract, the defendant had the right to specify. An inspection of the memoranda attached as exhibits to the statement of claim reveals that each memorandum clearly states the names of the parties, the quantity of sugar sold, the time of delivery, and the terms on which the sale was made. Each memorandum is signed by the broker who, as averred in paragraphs 4 and 5 of the statement, was authorized by each party to sign in its behalf.

### Question involved.

The question involved, then, is this: Do the sales memoranda in question sufficiently state the price to be paid by the defendant for the sugar contracted for so as to constitute the "memoranda in writing" required by section 4 of the Sales Act?

### Plaintiff's proposition.

In answer to the defendant's contention as to the insufficiency of the sales memoranda, plaintiff advances the proposition that the apparent insufficiency is due solely to the unfamiliarity of those outside the sugar trade with the technical meaning of the terms used.

The statement of claim sets forth the meaning of the trade terms used, and alleges that universally throughout the sugar business the words "Basis 22.50" have a peculiar trade meaning, as follows:

"The price of fine granulated sugar packed in bulk in barrels or 100-lb. bags is 22.50 cents per pound, and the price of any other grade or package is determined by adding to or subtracting from said price the amount of the now existing standard trade differential applicable to such other grade or package."

The plaintiff further avers that when these contracts were made there were, and had been for a long time in existence, standard trade differentials applicable to each particular grade; that these were familiar to the defendant and all other sugar buyers, and that these the plaintiff and defendant and the broker specifically referred to in the use of the words "Basis 22.50," and that

this was in accordance with the actual prior practice of the parties to this suit in their previous dealings in sugar.

## Discussion.

The requirements of the statute of frauds, which statute is virtually re-enacted in section 4 of the Sales Act of 1915, are satisfied if the entire agreement of the parties can be determined by a reading of the written contract standing alone, or by a reading of that contract with the assistance of a standard dictionary, a technical dictionary or a trade dictionary, or by a reading of that contract as it is interpreted by law or by custom or trade usage. A contract might contain phrases in a foreign language intelligible to but few, yet, if the language was capable of reasonably precise interpretation, the statute of frauds would not be violated by the use of such phrases. A contract might contain technical terms or abbreviations which would be meaningless to the majority of individuals, and yet would have a precise meaning to those familiar with the terms or abbreviations. The use of these terms or abbreviations in the contract would not be in contravention of the statute of frauds.

Every word or phrase or numeral employed in any contract is in itself only a symbol of some thought or idea that was in the mind of the contracting parties. All written language is, in a strict sense, a sign language. Whether the symbol is known to the many or to the few is immaterial. The only important thing is that the language used in a contract was understood by the parties and is capable of reasonably precise interpretation.

For example, in contracts for the sale of automobiles the phrase "f. o. b. Detroit" frequently appears. This might be a phrase unintelligible to some, but as it has a definite trade meaning, its use in the form of contract referred to does not make said contract any less a "memorandum in writing" within the meaning of the Sales Act; and as was suggested in the argument by plaintiff's counsel, the use of code words translatable under a definite code would not destroy the writing's character as a memorandum.

Section 4 of the Sales Act lays down no requirement as to the language in which the "note or memorandum" must be written, or as to the signs or symbols to be used to express what is in the minds of the contracting parties. The only obvious requirement as to this is that the language or symbol used be entirely intelligible to the contracting parties and be capable of specific interpretation by reference to certain definite customs or codes. Whatever customs or trade usages are impliedly contained in the memorandum need not be expressed therein.

Adherence to this doctrine does not in any degree defeat the purposes of the statute of frauds; that is, paragraph 4 of the Sales Act. Contracts for the sale of goods of the value of $500 or upward are not enforceable if resting in parol. The law will not permit parol proof of what such agreements were, but the parol interpretation of technical or trade terms appearing in written contracts is quite a different thing. If contracts for the sale of goods of substantial value could be proved by parol, the existence of such contracts could often be supported only by a single oath, there would be great temptation to perjury, and injustice would frequently result. The rearing of contracts involving substantial amounts upon such uncertain foundations cannot be permitted. Public policy, as expressed in section 4 of the Sales Act, forbids this possibility. But the meaning of trade terms or the existence of trade usages will not in any case be dependent on a single oath. These are things within the knowledge of many, and but little difficulty will be expe-

3 D. & C.

rienced in proving the precise meaning of trade terms or the existence or non-existence of the usage or custom alleged.

We think the proposition that technical trade terms, as used in a written contract, may be proved by parol is abundantly supported by the authorities: Franklin Sugar Refining Co. *v.* Howell, 274 Pa. 190; Warner-Godfrey Co. *v.* Sheinman, 273 Pa. 105.

We also agree with the contention of plaintiff's counsel that the statute of frauds is satisfied if the whole of the express undertaking of the parties appears in the written memorandum. Those elements which enter into the contractual obligation through implication of law, or through trade usage, or through the practice of the parties, and which are, therefore, not expressly referred to by the parties, need not appear in the memorandum. That customs and legal implications relevant to the subject-matter of a contract are as much a part of the contract as though they were expressly written therein, we think is a proposition also abundantly sustained by the authorities: Humfrey *v.* Dale, 7 E. & B. 266, and E. B. & E. 1004. As Lord Campbell, C. J., said in that case: "The minds of the lawyers are under a different influence from that which, in spite of them, will always influence the practice of traders, which practice creates the usages of trade. The former desire certainty, and would have a written contract express all its terms, and desire that no parol evidence beyond it should be receivable. But merchants and traders, with a multiplicity of transactions pressing on them, and moving in a narrow circle, and meeting each other daily, desire to write little, and leave unwritten what they take for granted. In spite of the lamentations of judges, they will continue to do so; and in a vast majority of cases, of which courts of law hear nothing, they do so without loss or inconvenience; and, upon the whole, they find this mode of dealing advantageous even at the risk of occasional litigation. It is the business of courts reasonably so to shape their rules of evidence as to make them suitable to the habits of mankind, and such as are not likely to exclude the actual facts of the dealings between parties when they are to determine on the controversies which grow out of them. It cannot be doubted, in the present case, that in fact this contract was made with the usage understood to be a term in it; to exclude the usage is to exclude a material term of the contract, and must lead to an unjust decision." See, also, William Whitman & Co. *v.* Namquit Worsted Co., 206 Fed. Repr. 549 (1913); Williams *v.* Woods, 16 Maryland, 220.

Coleman *v.* St. Paul Lumber Co., 188 Pac. Repr. 532 (Wash., 1920): "While we have said that the writing need not be formal, and may contain implied conditions and may use trade terms or abbreviations requiring explanations, without subjecting it to the fault of incompleteness, yet it must be so far complete in itself, after effect is given to the implied conditions and the trade terms and abbreviations are explained, as to show the bargain made."

In King Collie Co. *v.* Richards, 76 Oklahoma, 6, the written memorandum described the price of the cotton sold as "19-1/16 basis," and the court held: "It was competent to prove by oral testimony what was meant by the parties in stating that the cotton was sold at 19-1/16 basis, this being a term peculiarly known to cotton men in the purchase and sale of cotton."

## Conclusion.

We think that in the case at bar the contract between the parties was so far complete in itself, when effect is given to the implied conditions and the trade terms and abbreviations are explained, as to show the bargain made,

and thus to satisfy section 4 of the Sales Act. The only matters necessary to make the contract clear, even to the lay mind, are the meaning of "assortment," "basis 22.50," and the addition of the differentials. These are all matters of custom and usage which impliedly and inherently are a part of the contractual obligation without being defined and expressed at length.

Plaintiff's statement sets forth the meanings of the technical terms used, and declares that these same terms have been used by the plaintiff and the defendant in previous dealings of a similar character, and that the precise meaning of these terms was clearly understood by the plaintiff and by the defendant and by the sugar trade generally. The defendant, by demurring, admits the truth of these facts set forth in plaintiff's statement. We, therefore, can see no merit in the legal propositions advanced by the defendant in its answer raising questions of law.

### Order.

Therefore, now, to wit, Dec. 7, 1922, the affidavit of defence raising questions of law is overruled.          From William A. Wilcox, Scranton, Pa.